In re Larry HOHOL and
Cryco, Inc., Debtors.

Larry HOHOL and Cryco,
Inc., Appellants,

v.

ESSEX INDUSTRIES, INC. and Penox
Technologies, Inc., formerly Big
Ben Group, Ltd., Appellees.

Civ. Nos. 91–1616, 91–1617.

United States District Court,
M.D. Pennsylvania.

April 8, 1992.

John J. Thomas, Wilkes–Barre, Pa., for debtors.

Ronald V. Santora, Wilkes–Barre, Pa., for appellees.

## MEMORANDUM

NEALON, District Judge.

By separate Orders dated September 26, 1991, the Bankruptcy Court denied the appellants' motion to reject an executory contract and granted the appellees' motion for relief from the automatic stay. The appellants, raising various asserted errors, appeal from the September 26, 1991 Orders. For the reasons that follow, the court will affirm the Orders of the Bankruptcy Court.

### I.

On December 27, 1988, Essex Technologies, Inc. (Essex) entered into an agreement (Asset Agreement) with Larry Hohol (Hohol) to purchase the assets of Penox Technologies, Inc. (Penox).[1] Penox and Hohol simultaneously executed an Employment Agreement and an Agreement Not To Compete (Noncompetition Agreement). In accordance with the Employment Agreement, Hohol was employed as a consultant with Penox until March 21, 1989.

Upon terminating his employment with Penox, Hohol incorporated Cryco, Inc. (Cryco), of which he is the President and majority shareholder. A dispute arose concerning Cryco's activities. Consequently, on August 1, 1990, the appellees, Essex and Penox (collectively Penox), filed a complaint with the Court of Common Pleas of Luzerne County in which it maintained that Hohol, through Cryco, had violated the Employment and Noncompetition Agreements. Penox, therefore, sought a preliminary and permanent injunction to enjoin the appellants, Hohol and Cryco (collectively Hohol), from further breaching the Employment and Noncompetition Agreements.

---

1. Hohol was the President and sole shareholder of Penox. Penox sold its assets to Big Ben Group, Ltd. (Big Ben), the assignee of the rights of Essex. Subsequently, on January 17, 1989, Big Ben changed its name to Penox Technologies, Inc. Hereafter, reference to Penox will signify Penox after the asset sale, including the period it was known as Big Ben, unless otherwise stated.

On July 9, 1991, the Court of Common Pleas granted the motion for a preliminary injunction after 17 days of hearings, which were conducted over an eight month span of time. The Injunction Order provides, in pertinent part:

1. That [Hohol and Cryco], their agents, servants and employees, and all persons acting for and on their behalf, are enjoined and prohibited from engaging in the design, development, manufacture, remanufacture, repair or sale of cryogenic containers and the machinery and equipment used for the production of such containers.

2. [Hohol and Cryco], their agents, servants and employees, and all persons acting for or on their behalf, are enjoined and prohibited from using or disclosing any confidential or proprietary business methods or information or trade secrets protected by the Employment Agreement and the [Noncompetition Agreement] entered into by and between the parties.

3. That this Order shall remain in effect until the final hearing in this case or the further order of this Court.

(*Motion for Relief from the Automatic Stay* at Exhibit F).[2]  By Order dated August 15, 1991, the Pennsylvania Superior Court denied Hohol's application for a stay pending appeal.[3] (*Id.* at Exhibit H). Subsequently, on August 21, 1991, Hohol and Cryco filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* At the time the bankruptcy petitions were filed, Hohol's appeal from the Injunction Order was pending before the Superior Court.

Hohol, on August 23, 1991, then filed a motion to reject the Noncompetition Agreement pursuant to 11 U.S.C. § 365. Hohol stated that "[i]t is in the best interests of [Cryco and Hohol] and the creditors of the estate that the [Noncompetition Agreement] be rejected inasmuch as it is burdensome to the estate and results in the estate being unable to generate income and con-

tinue employment of its employees." (*Motion to Reject Executory Contract* at ¶ 6). Thereafter, on August 27, 1991, Penox filed a motion for relief from the automatic stay asserting that "[d]espite the Injunction Order, [it] believe[s] and therefore aver[s] that Cryco is presently operating in defiance of and in violation of the Injunction Order under the guise of Chapter 11 [p]rotection." (*Motion for Relief from the Automatic Stay* at ¶ 31). Penox insisted that "[u]nless th[e] [Bankruptcy] Court grants relief to permit [it] to seek contempt sanctions against Hohol to compel compliance with the Injunction Order, the Bankruptcy [C]ourt would in essence sanction the tortious conduct of [Hohol] and permit [him] to defy the Injunction Order." (*Id.* at ¶ 37).

After hearings conducted on September 9, 1991 and September 24, 1991, the Bankruptcy Court, by Orders dated September 26, 1991, granted Penox' motion for relief from the automatic stay and denied Hohol's motion to reject the Noncompetition Agreement. The Court noted that at the time the bankruptcy petitions were filed, Hohol was subject to the Injunction Order and that Hohol's efforts to stay the Injunction Order pending an appeal were denied by the Court of Common Pleas and the Superior Court. The Bankruptcy Court continued:

The record discloses that extensive hearings were held in the Court of Common Pleas of Luzerne County consisting of seventeen days of testimony over an eight month period, utilizing thirteen witnesses and producing in excess of one hundred exhibits. After these extensive proceedings, the Injunction Order was issued. The said Injunction Order represents a valid judgment entered by a Court of competent jurisdiction which must be recognized by this Court until overturned or vacated by that Court or an Appellate Court with supervisory powers over that Court's system.

---

**2.** On August 5, 1991, after considering a Request for Reconsideration, the County Court reaffirmed its decision to grant the preliminary injunction until final hearing. (*Motion for Relief from the Automatic Stay* at Exhibit F).

**3.** Pursuant to Pa.R.App.P. 311(a)(4), an appeal may be taken as of right from an order granting an injunction.

(*Stay Order* at 2). Upon examining *In re James,* 940 F.2d 46 (3d Cir.1991) and the automatic stay provision,[4] the Bankruptcy Court found "that cause exists to grant [Penox'] Motion for relief from the automatic stay in order to permit [Penox] to seek enforcement of a final resolution of the Preliminary Injunction granted to [Penox]." (*Stay Order* at 3).

In denying the motion to reject the Noncompetition Agreement, the Bankruptcy Court stated:

> Testimony proposed to be offered by [Hohol] in support of this Motion concerned testimony which had previously been presented in the Court of Common Pleas of Luzerne County proceeding. In view of the fact that the County proceeding record clearly establishes that the agreement which [Hohol] would like to reject has already been determined to be breached by an Order of Injunction issued prior to bankruptcy, the effect of the relief requested by this Motion would have us circumvent the Injunction Order previously issued by the Court of Common Pleas of Luzerne County.

(*Rejection Order* at 2). The Court again referred to *In re James* and found that the motion to reject the Noncompetition Agreement "must be regarded as premature." (*Id.*)

## II.

A district court "may set aside the bankruptcy court's factual findings only if the findings are clearly erroneous." *J.P. Fyfe, Inc. of Florida v. Bradco Supply Corp.,* 891 F.2d 66, 69 (3d Cir.1989) (citation omitted). "The bankruptcy's court's legal conclusions, however, are subject to [a] district court's plenary review." *Id.* (citation omitted). Jurisdiction is based upon 28 U.S.C. § 158(a).

## III.

In the present action, the automatic stay prevents the Court of Common Pleas from enforcing the Injunction Order.[5] Thus, despite that Court's determination that Hohol is breaching the Employment and Noncompetition Agreements, absent relief from the stay, Penox cannot judicially enforce Hohol's compliance with the Injunction Order. The question before the court is whether the Bankruptcy Court correctly determined that cause existed to grant Penox' relief from the automatic stay.

With respect to the Bankruptcy Court's determination that Penox is entitled to relief from the automatic stay, Hohol maintains that the Bankruptcy Court "erroneously relied on a conclusion of law at a preliminary hearing level as an equivalent to a final judgment...." (*Appellants' Stay Brief* at 6). As a consequence, Hohol further contends that the Court "committed grave error when it concluded that a breach of the covenant not to compete occurred despite the fact that no [c]ourt had ever issued a final judgment on that matter...." (*Appellants' Rejection Brief* at 8). In addition, Hohol challenges the Bankruptcy Court's determination that every breach of contract terminates a contract and renders it nonexecutory. (*Id.*)

Penox maintains that, pursuant to 28 U.S.C. § 1738, the Injunction Order is enti-

---

**4.** Section 362 provides, in pertinent part:
(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
(1) *for cause,* including the lack of adequate protection of an interest in property of such party in interest....
11 U.S.C. § 362 (1979 and Supp.1991) (emphasis supplied).

**5.** *See, e.g., Maritime Electric Co., Inc. v. United Jersey Bank,* 959 F.2d 1194 (3d Cir.1991) (vacated by order dated January 10, 1992, and rein- stated by order dated March 24, 1992). "Once triggered by a debtor's bankruptcy petition, the automatic stay suspends any non-bankruptcy court's authority to continue judicial proceedings then pending against the debtor." *Id.* at 1206. The effect of the stay does not depend upon whether the court finds for or against the debtor, *id.* at 1206, and it " 'continues until the bankruptcy case is closed, dismissed, or discharge is granted or denied, or until the bankruptcy court grants some relief from the stay.' " *Id.* (citations omitted). Authority to grant relief from the stay is vested in the bankruptcy court with jurisdiction over the debtor's case. *Id.* at 1204 (citation omitted).

tled to full faith and credit in this court[6] and argues that *In re Brown,* 951 F.2d 564 (3d Cir.1991), supports its position that the Injunction Order should be given preclusive effect. (*Appellees' Brief* at 16–17). With respect to Hohol's motion to reject, Penox argues that the Noncompetition Agreement cannot be severed from the Asset Agreement and Employment Agreement. In the alternative, Penox asserts that, as the Court of Common Pleas determined that the Noncompetition Agreement had been breached, the Noncompetition Agreement was no longer an executory contract. Therefore, under § 365 of the Bankruptcy Code, it could not be rejected.

### IV.

█ Penox' argument that the Injunction Order is entitled to full faith and credit and should be given preclusive effect need not be addressed inasmuch as the court agrees with the Bankruptcy Court's decision to grant Penox relief from the automatic stay for cause. Under § 362(d)(1), relief may be granted for cause. The decision is within the discretion of the bankruptcy judge and may be reversed only for an abuse of discretion. *In re Dixie Broadcasting, Inc.,* 871 F.2d 1023, 1026 (11th Cir.1989) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 814 F.2d 844 (1st Cir.1987) and *In re Holtkamp,* 669 F.2d 505 (7th Cir.1982)).

There is no rigid test for determining when an unsecured creditor, such as Penox,[7] has established cause to warrant relief from the automatic stay. Instead, the

> cases recognize that the bankruptcy court's exercise of discretion in resolving motions for relief for "cause" must appropriately consider the policies underlying the Bankruptcy Code as well as the competing interests of the creditor, debtor, and other parties in interest. Each request for relief for "cause" under

§ 362(d)(1) must be considered on its own facts.

*In re Borbridge,* 81 B.R. 332, 335 (Bankr. E.D.Pa.1988) (citation omitted). "In some instances, relief has been granted because the matter in dispute would be resolved more economically, conveniently, and quickly in a nonbankruptcy forum." *Id.* (citations omitted).

The Bankruptcy Court, in *In re Stranahan Gear Co., Inc.,* 67 B.R. 834 (Bankr. E.D.Pa.1986), noted:

> that, in most of the cases in which unsecured creditors have been granted relief, two (2) factors have coalesced: (1) the Debtor has engaged in some morally culpable conduct which the moving party seeks to undo in a court action; and (2) the creditor does not seek to pursue assets of the estate or is prohibited from doing so, although given relief to pursue certain remedies against the debtor.

*Id.* at 837–38 (citations omitted). In particular, the *Stranahan* Court pointed to *In re Larkham,* 31 B.R. 273 (Bankr.D.Vt.1983), in which the Bankruptcy Court permitted the plaintiff to pursue an employment discrimination action against the debtor.

In *In re Larkham,* the plaintiff commenced an action in the United States District Court for the District of Vermont under Title VII of the Civil Rights Act of 1964 against the debtor approximately ten months prior to the debtor's petition in bankruptcy. The plaintiff sought injunctive and monetary relief. The Court stated:

> In deciding whether sufficient cause is provided by plaintiff's desire to proceed in another forum, the Court recognizes that the facts of the complaint will determine whether relief is appropriate. H.R.Rep. No. 595, 95th Cong., 1st Sess. 343–4 (1977). Relevant considerations beyond plaintiff's desire to continue else-

---

**6.** The Full Faith and Credit Clause of the Constitution is effectuated by the full faith and credit statute. The Full Faith and Credit Act, 28 U.S.C. § 1738 provides, in pertinent part, that state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the

courts of such State ... from which they are taken."

**7.** The court assumes that Penox would be an unsecured creditor of Hohol inasmuch as the Voluntary Petitions filed by Hohol and Cryco list Penox as an unsecured creditor.

where the instant employment discrimination action are whether the bankruptcy estate will be prejudiced by a lifting of the stay and whether the granting of relief will interfere with or be inconsistent with this bankruptcy proceeding. S.Rep. No. 989, 95th Cong., 2d Sess. 52–3 (1978), U.S.Code Cong. & Admin.News, p. 5787. Where neither prejudice to the bankruptcy estate nor interference with the bankruptcy proceeding is demonstrated, the desire of a stayed party to proceed in another forum is sufficient cause to warrant lifting the automatic stay.

*In re Larkham*, 31 B.R. at 276 (citations omitted). The Bankruptcy Court noted that the primary purpose of the automatic stay is to prevent the depletion of the bankruptcy estate's assets during the course of the bankruptcy proceeding. That purpose, the Court found, would not be endangered by the plaintiff's request for injunctive relief. *Id.*

The instant action is within the line of cases finding cause to grant relief from the automatic stay. Although the court does not have access to the records of the state court proceedings, a review of the present record indicates that the Injunction Order was issued after 17 hearings conducted over an eight month span of time.[8] A stay pending appeal was denied by both the Court of Common Pleas and the Superior Court. Further, Hohol neither contends that he did not have an opportunity to fully present his case before the Court of Common Pleas nor that the Court of Common Pleas committed serious trial errors. In light of the extensive proceedings already undertaken in the Court of Common Pleas and Hohol's failure to point to any reason why that Court cannot render a competent decision, the Court of Common Pleas would "more economically, conveniently, and quickly" resolve the present dispute.[9] *See cf. In re Brown*, 951 F.2d at 570 ("To litigate those issues [raised in the state court] again in the bankruptcy court would be the 'kind of waste of judicial resources' that we referred to in *In re Braen* [3rd Cir.], 900 F.2d [621] at 625. The questioned procedural errors of the state trial judge are matters to be reviewed in the New Jersey courts, rather than in the bankruptcy court.") In addition, the resolution of the Common Pleas action involves issues of state law, unrelated to bankruptcy law, with which the state courts are familiar.

Moreover, Hohol has not shown that the bankruptcy estate would be prejudiced by the lifting of the stay. While Penox may seek sanctions to enforce compliance with the Injunction Order, it does not, at this time, request damages for Hohol's breach of the Noncompetition Agreement. Thus, continuation of that suit in the Court of Common Pleas would not work to the detriment of other creditors of Hohol and deplete the bankruptcy estate's assets as Penox primarily requests injunctive relief. *See In re Larkham*, 31 B.R. at 276.

Hohol's statement that the "inability to manufacture or repair cryogenic containers significantly impacts the only

---

8. While Hohol contends that the Bankruptcy Court "inappropriately relied on a record of the County Court of Common Pleas that was not presented to it and did not exist because no transcript was available to it to review in conjunction with the [bankruptcy proceedings][,]" (*Appellants' Stay Brief* at 8), there is no assertion that the Common Pleas Court did not conduct 17 hearings over an eight month span.

9. Section 362 provides, in pertinent part:
(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—
(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
(2) the party opposing such relief has the burden of proof on all other issues.
11 U.S.C. § 362 (1979). In *In re Stranahan*, the Bankruptcy Court noted that the party seeking relief must first establish a *prima facie* case for cause. *In re Stranahan*, 67 B.R. at 836–37 (citation omitted). Section 362(g)(2) then places the burden of proof on the party opposing relief from the stay in a case, such as the present one, when relief is based only on cause and not the lack of adequate protection of an interest in property. Penox, by pointing to the Injunction Order and indicating its desire to proceed in the state courts, has established a *prima facie* case for cause. Thus, the burden shifts to Hohol to establish that relief from the automatic is unwarranted.

source of [his] income ...[,]" *(Motion to Reject Executory Contract* at ¶ 4), does not warrant denial of relief from the stay. If Hohol is, in fact, breaching the Noncompetition Agreement, this statement is of no moment. The Bankruptcy Code was not intended to relieve Hohol of the consequences of an injudicious business deal. *See In re Dixie Broadcasting,* 871 F.2d at 1027. The timing of Hohol's and Cryco's filing of bankruptcy petitions must be considered. Hohol and Cryco filed for bankruptcy and sought to reject the Noncompetition Agreement only after the Court of Common Pleas issued the Injunction Order and that Court and the Superior Court denied Hohol a stay pending appeal. This creates the appearance that Hohol was dissatisfied with the result of the state court proceedings and wanted another chance to litigate the issue before the Bankruptcy Court.

For the foregoing reasons, the Order granting relief from the automatic stay will be affirmed. The state court proceedings will be permitted to continue, and Penox may seek sanctions against Hohol to enforce the Injunction Order pending the appeal. Inasmuch as Hohol's motion to reject the Noncompetition Agreement necessarily turns on the state court findings with respect to breach of the Noncompetition Agreement, the Order denying the motion to reject will be affirmed.

An appropriate Order will be entered.