**In re Michael LINCOLN, Debtor.**

**No. 00–34790KJC.**

United States Bankruptcy Court,
E.D. Pennsylvania.

July 2, 2001.

Eugene Joseph Malady, Media, PA, for debtor.

Scott Waterman, Black & Associates, PC, Media, PA, for creditor.

Edward Sparkman, Philadelphia, PA, trustee.

Frederic J. Baker, Sr., Philadelphia, PA, Assistant United States Trustee.

## MEMORANDUM OPINION

KEVIN J. CAREY, Bankruptcy Judge.

### BACKGROUND

Before this Court is the "Motion For Relief From Automatic Stay" filed on March 5, 2001 (the "Stay Motion"), by Courtney Tucker (the "Movant"). A hearing on the Stay Motion was held on March 27, 2001, at which Movant introduced evidence [1] and the parties argued their respective positions.

I find the following facts are relevant to this matter:

---

1. At the hearing, Movant's Exhibits M–1 through M–8 were admitted into evidence.

1. Debtor and Movant lived together at the debtor's residence in Crum Lynne, Pennsylvania and were engaged to be married.

2. In February 2000, the engagement ended and, although the parties dispute the circumstances surrounding the break-up, they agree that Movant left the house without any of her personal property (consisting of clothes, jewelry, furniture, etc.[2]) and, while she was gone, the debtor changed the locks and would not allow Movant to enter the residence to retrieve her personal property.

3. Movant filed an action in the Court of Common Pleas, Delaware County (CV–00–1527) seeking a Protection From Abuse Order (the "State Court Proceeding").

4. At a hearing on February 23, 2000, the debtor claimed he no longer was in possession of Movant's personal property.[3] The Honorable Maureen F. Fitzpatrick entered a Protection From Abuse Order which also granted Movant's request to go to debtor's residence on February 26, 2000 with a police escort to obtain her personal belongings.[4]

5. On February 26, 2000, Movant went to debtor's residence with police to search for her property. Except for a few pieces of furniture, Movant did not find or recover her property from the debtor's residence.

6. On May 19, 2000, Movant filed a Petition for Civil Contempt in the State Court Proceeding, alleging that the debtor contacted Movant via e-mail in violation of the February 23, 2000 Order and indicated that he was still in possession of Movant's personal property.[5] The debtor denied the allegations.

7. On July 13, 2000, the Honorable Ann Osborne held a hearing on the Petition for Civil Contempt in the State Court Proceeding.

8. On August 10, 2000, Judge Osborne entered an Order[6] containing the following language:

1. Respondent, Michael Lincoln, is found to be in Civil Contempt of the Order of this Court dated February 23, 2000, permitting Petitioner [Movant] to obtain her personal belongings from his residence.

2. Respondent, hereinafter Contemnor, must return to Petitioner all of her personal possessions as listed on Exhibit P–1, a copy of which is attached hereto, or pay to Petition [sic] the sum of Nine Thousand Five Hundred Forty Three Dollars ($9,543.00) for those personal possessions within 15 days of the date of this Order.[7]

---

2. A list of Movant's missing personal property was attached to Exhibit M–5, which is a certified copy of an Order of the Court of Common Pleas, Delaware County, dated August 10, 2000.

3. The debtor claimed that he bagged and boxed Movant's personal property (except for some furniture), placed it on his porch, and when he awoke the next day it was gone. *See* Exhibit M–1, Transcript of February 23, 2000 hearing in the Court of Common Pleas, Delaware County, at pp. 19–21.

4. Exhibit M–2, Order of Judge Maureen Fitzpatrick dated February 23, 2000.

5. Exhibit M–3, Petition for Civil Contempt.

6. Exhibit M–5.

7. On April 20, 2001, Movant also filed a proof of claim in this case in the amount of $9,543.00, asserting that her claim was secured by a "judicial lien" created by the August 10, 2000 Order. The debtor has objected, disputing the claim's secured status, but not the amount. I conclude that Movant's claim is not secured. Section 101(36) of the Bankruptcy Code defines "judicial lien" as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." Section 101(37) of the Bank-

3. If Contemnor fails to comply with the above Order, Petitioner through counsel shall notify the Court by letter with a copy to Contemnor and counsel for Contemnor that such Order has not been complied with.

4. Upon receipt of such letter, the Court will establish a hearing date for the imposition of sanctions, which may include, but not be limited to a fine, incarceration, community service and any other sanction permitted by law which will bring the Contemnor into compliance with this Order.

9. On September 1, 2000, Judge Osborne entered an Order denying the debtor's petition to reconsider the court order dated August 10, 2000.[8]

10. On September 19, 2000, Movant's counsel sent a letter to Judge Osborne pursuant to paragraph 3 of the August 10, 2000 Order, advising that debtor had failed to comply with the August 10, 2000 Order.[9]

11. On November 30, 2000, the debtor filed a voluntary petition under chapter 13 of the U.S. Bankruptcy Code.

12. On March 5, 2001, Movant filed the Stay Motion, seeking relief from the stay to "hold debtor accountable for failing to comply with a previous Contempt Order in the months prior to the Bankruptcy filing." [10]

13. On March 16, 2001, the debtor filed an answer to the Stay Motion. For the reasons set forth in this Memorandum Opinion, the Stay Motion is denied.[11]

ruptcy Code defines "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation." The language of the August 10, 2000 Order imposes no lien on any property. I will allow the claim in the amount filed, as unsecured.

8. Exhibit M–6.

## DISCUSSION

The caselaw regarding the interplay between the automatic stay of § 362(a) and state court contempt proceedings is quite varied and usually depends upon the facts of the particular case. Most often, when considering the effect of the automatic stay of 11 U.S.C. § 362(a) upon state court contempt proceedings, courts are deciding whether the stay applies at all. The parties in the present case do not dispute that the automatic stay applies to the State Court Proceeding. I am asked to decide whether Movant is entitled to relief from the stay to continue the State Court Proceeding.

▪ Whether to terminate, modify, condition, or annul the bankruptcy stay under § 362(d) is within the discretion of the bankruptcy court. *See Matter of Holtkamp*, 669 F.2d 505 (7th Cir.1982); *In re Shariyf*, 68 B.R. 604 (E.D.Pa.1986); *In re Colonial Center, Inc.*, 156 B.R. 452, 459 (Bankr.E.D.Pa.1993). Whether an unsecured creditor should be granted relief from the stay to continue a state court proceeding was considered by the court in *In re Hohol*, 141 B.R. 293 (M.D.Pa.1992), which wrote:

> There is no rigid test for determining when an unsecured creditor...has established cause to warrant relief from the automatic stay. Instead the cases recognize that the bankruptcy court's exercise of discretion in resolving motions for relief for "cause" must appropriately consider the policies underlying the Bankruptcy Code as well as the

9. Exhibit M–7.

10. Stay Motion, p. 4.

11. This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Fed. R. Bankr.P. 7052.

competing interests of the creditor, debtor, and other parties in interest. Each request for relief for "cause" under § 362(d)(1) must be considered on its own facts.

*Hohol,* 141 B.R. at 297 (citations omitted). In *Hohol,* the debtor filed bankruptcy after the state court issued an injunction to prevent the debtor from continuing to violate an "Employment Agreement" and an "Agreement Not To Compete" between the debtor and his prior employer. The prior employer sought relief from the stay to enforce the injunction in state court. To determine whether "cause" existed for relief from stay in the matter before it, the *Hohol* court reviewed similar cases in which a party sought relief to continue a proceeding in another forum and considered factors such as: (1) whether the matter in dispute would be resolved more economically, conveniently, and quickly in a nonbankruptcy forum; (2) prejudice to the bankruptcy estate; and (3) interference with the bankruptcy proceeding. *Hohol,* 141 B.R. at 297–98.

It is helpful to review other cases analyzing the effect of the automatic stay on state court contempt proceedings for guidance in determining whether relief from the stay in the present matter would be consistent with the policies underlying the Bankruptcy Code and the competing interests of the parties. This is particularly so when a contempt order itself may not label the character of the contempt. Many courts agree that criminal contempt matters are not subject to the automatic stay pursuant to 11 U.S.C. § 362(b)(1). *See, e.g., In re Allison,* 182 B.R. 881, 884 (Bankr.N.D.Ala.1995). Courts in this district have found that "the automatic stay

has generally been applied to civil contempt proceedings." *In re Leonard,* 231 B.R. 884, 889 (E.D.Pa.1999) citing *In re Mickman,* 1993 WL 128147 (Bankr. E.D.Pa.1993); *In re Cherry,* 78 B.R. 65, 69 (Bankr.E.D.Pa.1987). The difference between criminal contempt and civil contempt has been described as follows:

> The distinction between criminal and civil contempt is ... a distinction between two permissible responses to contumacious behavior. These judicial responses are classified according to the dominant purpose of the court. If the dominant purpose is to prospectively coerce the contemnor to comply with an order of the court, the adjudication is civil. If, however, the dominant purpose is to punish the contemnor for disobedience of the court's order or some other contemptuous act, the adjudication of contempt is criminal.
>
> [The] dominant purpose of coercion or punishment is expressed in the sanction imposed. A civil adjudication of contempt coerces with a conditional or indeterminate sentence of which the contemnor may relieve himself by obeying the court's order, while a criminal adjudication of contempt punishes with a certain term of imprisonment or a fine which the contemnor is powerless to escape by compliance.

*Garr v. Peters,* 773 A.2d 183, 2001 WL 345840 (Pa.Super.2001) quoting *Diamond v. Diamond,* 715 A.2d 1190, 1194 (Pa.Super.1998).

 When deciding whether the automatic stay applies to a state court contempt proceeding, some bankruptcy courts will not rely upon labels of "civil" or "criminal" contempt.[12] It may be appropriate

---

**12.** *In re Rook,* 102 B.R. 490, 494 (Bankr. E.D.Va.1989)("[W]e adopt the analysis of the courts which examine all aspects surrounding the issuance of a contempt order, due to the

fact that the application of labels alone to the proceedings in question may result in a finding that does not comport with the intent of the Code."). *See also, In re Guariglia,* 382

for the bankruptcy court to look beyond the label and analyze the true nature of the contempt. Several courts have distinguished between contempt proceedings intended to effectuate collection of a judgment and those intended to uphold the dignity of the court, finding that the automatic stay does not apply to contempt proceedings whose main purpose is to punish a contemnor and uphold the dignity of the court. *In re Smith–St. John Manufacturing Co.*, 1989 WL 7922, *2 (D.Kan. 1989) ("[S]ection 362(a)(1) does not apply to contempt proceedings aimed at punishing a bankrupt for flouting court orders."); *US Sprint Communications Co. v. Buscher*, 89 B.R. 154 (D.Kan.1988) (the automatic stay does not prevent a state court from sentencing the debtor on a civil contempt citation after the debtor violated direct orders of the court); *In re Dunham*, 175 B.R. 615, 617 (Bankr.E.D.Va.1994) (the automatic stay did not prevent a state court from entering a contempt order to punish

the debtor for perjuring himself); *Rook*, 102 B.R. at 494–95 (the automatic stay did not apply to a second contempt order which was issued solely to uphold the dignity of the circuit court's prior orders).[13]

■ A similar analysis is useful in deciding whether this Movant is entitled to relief from the automatic stay to continue with the State Court Proceeding. If the underlying purpose of continuing the contempt action in the State Court Proceeding is to "uphold the dignity of the court" and continue a contempt action that is similar to the description of criminal contempt quoted in *Diamond v. Diamond, supra.*, then "cause" may exist for relief from the stay under § 362(d)(1). On the other hand, if the underlying purpose in continuing the contempt action is "calculated to enforce a money judgment, pursue a 'collection motive,' or to harass a defendant,"[14] then relief from the stay is not appropriate.

---

F.Supp. 758, 761 (E.D.N.Y.1974)("[I]f the contempt is not a contempt for which courts ordinarily punish an offender on their own motion but is in fact a method of collecting a debt upon the application of a creditor, then the so-called contempt is suspect and may in reality be nothing more than a label to assist the creditor.").

13. In support of their decisions that the automatic stay does not apply to certain contempt proceedings, courts have generally relied upon the following analysis in *US Sprint:*

It is within this court's inherent power to take whatever steps necessary to ensure those persons within its power comply with its orders. The court cannot conceive that Congress intended to strip the court of this power, and instead permit a party to blatantly violate direct orders of the court and then seek shelter from a bankruptcy judge. If this were so, the court's orders could be rendered almost meaningless. The court must retain the ability to compel compliance with its orders; a party seeking relief from his creditors is not free to run rampant in flagrant disregard of the powers of

the court. A civil contempt judgment is one effective method of coercing compliance and of "upholding the dignity of the court."
*US Sprint*, 89 B.R. at 156; and upon the following analysis in *Guariglia:*
There are a number of authorities which hold that if the contempt proceeding is a step to collect a judgment, then it should be stayed, the test being whether the fine was imposed by the state court to uphold its dignity or whether in effect it was a circumvented method of collecting a judgment against the debtor otherwise dischargeable in bankruptcy. If the proceeding in reality is one to punish the debtor for contumacious conduct against the dignity of either the state or federal court, the bankruptcy court should not raise its hand to stay the proceeding.
*Guariglia*, 382 F.Supp. at 761.

14. In *Rook*, the court found that "where the contempt citation is designed to uphold an order of a court and *not* calculated to enforce a money judgment, pursue a 'collection motive,' or to harass a defendant, ... courts

In its August 10, 2000 Order, the State Court wrote that the debtor was in civil contempt of the February 23, 2000 order and ordered the debtor either to (a) return Movant's personal property; *or* (b) pay Movant the sum of $9,543.00. The Movant seeks relief from the stay to "hold debtor accountable for failing to comply with a previous Contempt Order in the months prior to the Bankruptcy filing."

Movant's request to return to state court to pursue a contempt action against the debtor is more akin to an attempt to collect a debt (or harass the debtor), than to uphold the dignity of the court. The August 10, 2000 Order provides the Movant with a "claim" against the debtor pursuant to Bankruptcy Code § 101(5).[15] Granting the Movant's request for relief to return to state court would allow the Movant to further attempt to collect her claim. This may also prejudice other creditors of the bankruptcy estate.

Even assuming Movant was entitled to an equitable remedy of requiring the debtor to return her personal property,[16] monetary damages for the debtor's alleged wrongful conversion of her personal property is an appropriate alternative to that equitable remedy.[17] The Third Circuit Court of Appeals has found that a party

has a "claim" under § 101(5)(B) "when the payment of monetary damages is an alternative to the equitable remedy." *In re Ben Franklin Hotel Associates*, 186 F.3d 301, 305 (3d Cir.1999) (citations omitted).

The present case is not similar to cases like *Hohol* or *US Sprint*, in which the moving party sought to enforce a state court injunction and enjoin a debtor from continuing a course of action that was shown to be harmful to the moving party on an ongoing basis. The urgency in returning Movant's personal belongings (including all of her clothing, eyeglasses, passport, etc.) that existed at the time the original order was entered on February 23, 2000 has dissipated in the intervening 15 months, even though, understandably, Movant still seeks return of the items. However, the August 10, 2000 Order is not an order of the kind that was designed to uphold the dignity of the court by punishing the debtor for his behavior. Instead, the August 10, 2000 Order provides the debtor with the means to purge his contempt: by the payment of money. In *Leonard*, 231 B.R. at 889–90, the District Court found that the bankruptcy court properly denied relief from the stay to pursue a contempt proceeding based upon

have determined that enforcement of that order would *not* be in violation of the automatic stay." *Rook*, 102 B.R. at 493 (emphasis in original).

**15.** Section 101(5) defines "claim" as follows:
(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**16.** Movant argues that the State Court specifically found that the debtor was in possession of Movant's personal property; however, the August 10, 2000 Order itself does not include such a finding. In her argument, Movant admitted that the purpose of the Stay Motion was really to require the debtor to return her personal property. (Tr. at p. 14). Movant continuously overlooks the fact that the August 10, 2000 Order provides the debtor with the opportunity to purge himself of the contempt by paying $9,543.00 to Movant instead of returning Movant's personal property.

**17.** Pennsylvania courts have awarded monetary damages in wrongful conversion cases. *See Pikunse v. Kopchinski*, 429 Pa.Super. 46, 631 A.2d 1049 (1993).

a debtor's failure to pay a sum of money. Similarly, in this case, Movant has not shown "cause" for granting relief from the automatic stay to pursue a contempt proceeding for the debtor's failure to pay $9,543.00.

Accordingly, the Stay Motion will be denied. An appropriate order follows.

### ORDER

**AND NOW**, this 2nd day of July, 2001, for the reasons given in the accompanying Memorandum Opinion, it is hereby ORDERED that:

1. The Motion for Relief From the Stay filed by Courtney Tucker is **DENIED**; and

2. The debtor's "Objection To Proof Of Claim No. 4 Filed By Courtney Tucker" is **SUSTAINED** and Proof of Claim No. 4 shall be allowed as an unsecured claim in the amount of $9,543.00.