Opinion Issued on February 26, Withdrawn; Motion for Rehearing Granted;
Petition for Writ of Mandamus Conditionally Granted; and Opinion filed May 7,
2009








 

Opinion
Issued on February 26, Withdrawn; Motion for Rehearing Granted; Petition for
Writ of Mandamus Conditionally Granted; and Opinion filed May 7, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-01075-CV

____________

 

IN RE JOHN W. SMALL, Relator

 

 



 

ORIGINAL
PROCEEDING

WRIT OF MANDAMUS

 



 

O P I N I
O N   O N   R E H E A R I N G

Relator=s motion for rehearing is granted. 
The opinion issued on February 26, 2009, is withdrawn.  This opinion is
substituted in its place.  








On
November 25, 2008, relator, John W. Small, filed a petition for writ of
mandamus in this court.  See Tex. Gov=t Code Ann. ' 22.221 (Vernon 2004); see also
Tex. R. App. P. 52.  In the petition, relator asks this court to compel the
Honorable Mary Nell Crapitto, presiding judge of County Court at Law No. 1 of
Galveston County, to set aside her October 31, 2008 order finding relator in
contempt for failing to pay court-ordered temporary spousal support to real
party in interest, Murriah S. McMaster, and to to reverse her November 1, 2005
order awarding temporary spousal support to McMaster.  We conditionally grant
the petition for writ of mandamus.  

                                                               Background

In April
2005, a jury found that relator and McMaster had entered a common law marriage
on December 25, 1991.  On May 17, 2005, the trial court entered an
interlocutory judgment adopting the jury=s finding.  On November 1, 2005,
after holding hearings on July 20, 2005 and September 12, 2005, the trial court
signed an order directing relator to pay McMaster monthly temporary support in
the amount of $4,000.00.  

On March
8, 2006, the trial court held a hearing on McMaster=s first motion for enforcement of
temporary spousal support.  On April 20, 2006, the trial court signed an order,
finding relator in contempt for failing to pay temporary support from November
1, 2005 through March 1, 2006.  

On May
1, 2006, relator filed a petition for writ of mandamus in this court,
requesting that we direct the trial court to deny any motion for enforcement of
temporary support filed by McMaster, reverse its April 20, 2006 contempt and
commitment order, and modify the November 1, 2005 order for temporary support. 
On June 1, 2006, this court denied relator=s petition for writ of mandamus.  








In
October 2007, the trial court held a second jury trial on issues of community
property.  The jury made findings regarding which properties were community property,
relator=s separate property, or third party
property, and findings regarding the value of the community property.  The jury
further found that relator had committed fraud with respect to the community
property rights of McMaster.  On October 26, 2007, the trial court granted
McMaster=s motion for appointment of joint
receivers.  On November 8, 2007, relator filed for bankruptcy.[1] 


On
February 15, 2008, the bankruptcy court entered an order granting partial
relief from the bankruptcy stay.  See 11 U.S.C.A. ' 362(a)(1) (West 2004) (filing of
bankruptcy petition stays commencement or continuation of judicial proceeding
against debtor).  The bankruptcy court modified the stay to allow the trial
court to (1) enter judgment from the October 2007 trial Aconsistent with the evidence and the
jury verdict,@ (2) enter a divorce between relator and McMaster, (3) determine the
amount of any future support owed by relator to McMaster so long as such
support is paid from relator=s future earnings and not from property of the bankruptcy
estate, (4) determine the amount of any monetary damages claim held by McMaster
against relator, (5) enter any other order against any non-debtor parties, and
(6) allocate the community estate between relator and McMaster.  The order also
allows any party to the underlying proceeding to Aprosecute any appeal of the orders
and/or judgments@ of the trial court.  








On
October 29, 2008, the trial court held a hearing on McMaster=s fifth motion to enforce in which
McMaster asked the trial court to direct relator to pay the $20,000 in arrears
previously ordered on April 20, 2006, and $124,000 in arrears through October
1, 2008.  On October 31, 2008, the trial court entered an order, finding that
relator was able to pay temporary monthly spousal support in the amount of
$4,000.00 from April 1, 2006 through October 1, 2008, and is in arrears in the
amount of $124,000.00 for that period.  The trial court found relator in
contempt for each violation and assessed confinement in Galveston County jail
for 179 days, but probated the sentence for one year provided that relator paid
the $124,000.00 in arrears in four installments of $31,000.00 each on or before
December 1, 2008, January 3, 2009, February 2, 2009, and March 2, 2009.  The
trial court also assessed attorney=s fees and costs in the amount of
$8,694.15 against relator and directed that he pay such amount on or before
March 2, 2009.  The trial court further ordered relator to pay the $20,000.00
in arrears, as directed in the April 20, 2006 contempt order, and $25,000.00 in
attorney=s fees, as directed in the November
1, 2005 order, on or before March 2, 2009.  

In his
motion for rehearing, relator argues, for the first time, the October 31, 2008
contempt order is void because it violates the automatic bankruptcy stay.[2] 
ABecause in Texas we recognize that a
judgment entered in violation of the bankruptcy stay is void for lack of
jurisdiction, this is a fundamental error that can be recognized by the
appellate court, sua sponte, or raised for the first time on appeal by a party.@  Houston Pipeline Co. LP v. Bank
of Am., N.A., 213 S.W.3d 418, 429 (Tex. App.CHouston [1st Dist.] 2006, no pet.). 
Therefore, we will address this issue.  

                                                       Standard of Review








Because
relator is not restrained, petition for writ of mandamus, rather than habeas
corpus, is relator=s only possible relief.  In re Long, 984 S.W.2d 623,
625 (Tex. 1999) (orig. proceeding) (per curiam); Rosser v. Squier, 902
S.W.2d 962, 962 (Tex. 1995) (orig. proceeding) (per curiam).  To be entitled to
the extraordinary relief of a writ of mandamus, the relator generally must show
that the trial court clearly abused its discretion and he has no adequate
remedy by appeal.  In re Team Rocket, L.P., 256 S.W.3d 257, 259 (Tex.
2008) (orig. proceeding).  A trial court clearly abuses its discretion if it
reaches a decision so arbitrary and unreasonable as to amount to a clear and
prejudicial error of law.  Walker v. Packer, 827 S.W.2d 833, 839 (Tex.
1992) (orig. proceeding).  When a challenged order is void for lack of
jurisdiction, the relator is not required to establish that he has no adequate
remedy by appeal.  In re S.W. Bell Tel. Co., 35 S.W.3d 602, 605 (Tex.
2000) (per curiam).  Section 6.502 of the Texas Family Code provides for
temporary support while a suit for dissolution of a marriage is pending.  Tex.
Fam. Code Ann. ' 6.502(a)(2) (Vernon 2006).  Generally, a person who
willfully disobeys a valid court order is guilty of contempt and subject to
imprisonment for a prescribed period until he complies with the order.  Ex
parte Hall, 854 S.W.2d 656, 658 (Tex. 1993) (orig. proceeding).  An order
requiring temporary support payments is enforceable by contempt.  Id.  

                                                          Bankruptcy Stay

The filing
of a bankruptcy petition stays:

[T]he commencement or continuation, including the
issuance or employment of process, of a judicial, administrative, or other
action or proceeding against the debtor that was or could have been commenced
before the commencement of the case under this title, or to recover a claim
against the debtor that arose before the commencement of the case under this
title.








11 U.S.C.A. ' 362(a)(1).  An automatic stay is
triggered when a bankruptcy petition is filed, whether or not a party or the
non-bankruptcy court learns of the bankruptcy prior to taking action against
the debtor.  Darr v. Altman, 20 S.W.3d 802, 806B07 (Tex. App.CHouston [14th Dist.] 2000, no pet.); Paine
v. Sealey, 956 S.W.2d 803, 805 (Tex. App.CHouston [14th Dist.] 1997, no pet.). 
The automatic bankruptcy stay abates any judicial proceeding against the
debtor,[3] depriving
state courts of jurisdiction over the debtor and his property until the stay is
lifted or modified.  Baytown St. Bank v. Nimmons, 904 S.W.2d 902, 905
(Tex. App.CHouston [1st Dist.] 1995, writ denied); S. County Mut. Ins. Co. v.
Powell, 736 S.W.2d 745, 748 (Tex. App.CHouston [14th Dist.] 1987, orig.
proceeding). An action taken in violation of the automatic bankruptcy stay is
void, not merely voidable.  Howell v. Thompson, 839 S.W.2d 92, 92 (Tex.
1992) (order); Continental Casing Corp. v. Sameadan Oil Corp., 751
S.W.2d 499, 501 (Tex. 1988) (per curiam).  The terms of an order modifying the
automatic stay must be strictly construed.  Stephens v. Hemyari, 216
S.W.3d 526, 529 (Tex. App.CDallas 2007, pet. denied) (citing Casperone v. Landmark
Oil & Gas Corp., 819 F.2d 112, 114 (5th Cir. 1987)).

Section
362(b)(1) provides the filing of a bankruptcy petition does not operate as a
stay Aof the commencement or continuation
of a criminal action or proceeding against the debtor; . . .@  11 U.S.C. ' 362(b)(1) (emphasis added).  Thus,
the commencement or continuation of a criminal contempt action is not
automatically stayed by filing a bankruptcy petition.  In re Wiese, 1
S.W.3d 246, 249 (Tex. App.CCorpus Christi 1999, orig. proceeding).[4] 
A>This exception is consistent with the
strong federal policy against federal interference with state court criminal
prosecutions.=@  In re Roussin, 97 B.R. 130, 132 (D. N.H. 1989)
(quoting 2 Colliler on Bankruptcy & 362.05, at 362B44(15th ed. 1988)).  We must
determine whether the order at issue is for criminal or civil contempt.








The
distinction between civil and criminal contempt is based on the nature and
purpose of the penalty imposed.  Ex parte Johns, 807 S.W.2d 768, 770
(Tex. App.CDallas 1991, orig. proceeding).  In a civil contempt proceeding, the
court is attempting to persuade the contemnor to obey a previous order.  Id.;
see also Ex parte Harrison, 741 S.W.2d 607, 609 (Tex. App.CDallas 1991, orig. proceeding)
(explaining purpose of civil contempt order is to encourage obedience).  A
judgment providing that a contemnor is to be committed unless and until he
performs the affirmative act required by the court=s order is a civil contempt order.  In
re Mott, 137 S.W.3d 870, 875 (Tex. App.CHouston [1st Dist.] 2004, orig.
proceeding); Ex parte Johns, 807 S.W.2d at 770.  Where the contemnor can
avoid incarceration by obeying the court=s order, the contemnor is said to A>carr[y] the  keys of [his] prison in
[his] own pocket.=@  Ex parte Werblud, 536 S.W.2d
542, 545 (Tex. 1976) (orig. proceeding) (quoting Shillitani v. U.S., 384
U.S. 364, 368 (1966)).  

The
purpose of a criminal contempt order is to punish for disobedience.  Ex
parte Harrison, 741 S.W.2d at 609.  A criminal contempt order is punitive
and unconditional in nature and is an exertion of the court=s inherent power to punish the
contemnor for a completed act that affronted the court=s dignity and authority.  Ex parte
Werblud, 536 S.W.2d at 545; Gonzalez v. State, 187 S.W.3d 166, 170
(Tex. App.CWaco 2006, no pet.).  Generally, the punishment for criminal contempt is
fixed and definite; no subsequent voluntary compliance on the part of the
defendant can enable him to avoid punishment for his past acts.  Ex parte
Werblud, 536 S.W.2d at 546 (quoting Ex parte Hosken, 480 S.W.2d 18,
23 (Tex. Civ. App.CBeaumont 1972, orig. proceeding)).  The key feature that
distinguishes criminal contempt from civil contempt is that its penalty is
unconditional.  Ex parte Johns, 807 S.W.2d at 771.  

With
regard to Acriminal contempt,@ the October 31, 2008 order states:  

Criminal
Contempt

IT IS
ORDERED that punishment for each separate violation is assessed at confinement
in the county jail of Galveston County, Texas, for a period of one hundred and
seventy-nine (179) days.  

IT IS
THEREFORE ORDERED that Respondent is committed to the county jail of Galveston
County, Texas, for a period of one hundred and seventy-nine (179) days for each
separate violation enumberated above.

IT IS ORDERED that each period of confinement assessed
in this order shall run and be satisfied concurrently.








The
order further probated relator=s commitment for one year on the conditions that relator
pay:  (1) the $124,000.00 in four equal installments of $31,000.00 on December
1, 2008, January 3, 2009, February 2, 2009, and March 2, 2009; (2) pay McMaster=s attorney=s fees and costs in the amount of $8,
694.15 by March 2, 2009; and (3) all spousal support as ordered on November 1, 2005. 


The
order also set four compliance hearings, at which relator is ordered to appear,
to determine whether relator has made the $31,000.00 installment payments to
McMaster.  The fourth compliance hearing is also to determine whether relator
has made the $20,000 for support payments awarded on April 20, 2006 (the first
contempt order), the $25,000.00 in attorney=s fees awarded on November 1, 2005,
and the $8,694.15 in attorney=s fees awarded on October 29, 2008.  

Even
though the order states relator is being sentenced to a jail term for Acriminal contempt,@ it also provides relator may avoid
jail time by making the four installment payments to McMaster.  Therefore, we
conclude the order is actually a civil contempt order.  See Ex parte Werblud,
536 S.W.2d at 545 (quoting Shillitani, 384 U.S. at 368) (explaining,
where contemnor can avoid incarceration by obeying court=s order, contemnor is said to A>carr[y] the  keys of [his] prison in
[his] own pocket=@).  








Bankruptcy
courts take two approaches to determining whether a civil contempt proceeding
is subject to the automatic bankruptcy stay.  Some courts hold, because civil
contempt is not among the exceptions found in section 362(b), such actions are
considered private collection devices and come within the scope of the
automatic stay.  In re Wiley, 315 B.R. 682, 687 (E.D. La. 2004) (quoting
In re Newman, 196 B.R. 700, 704 (S.D. N.Y. 1996)); In re Lincoln,
264 B.R. 370, 373B74 (E.D. Pa. 2001).[5]  Other courts
do not look to the civil or criminal nature of the state court proceedings, but
look at the circumstances surrounding the issuance of the order of contempt to
determine whether the intent of the court was (1) to enforce compliance with a
court order, i.e., satisfy a judgment, or (2) to uphold the dignity of the
court or simply to punish.  In re Wiley, 315 B.R. at 687; In re
Lincoln, 264 B.R. at 373B74.  Where the contempt citation is designed to uphold an
order of the court and not calculated to enforce a money judgment, i.e., pursue
a Acollection motive,@ enforcement of that order does not
violate the bankruptcy stay.  In re Rook, 102 B.R. 490, 493 (E.D. Va.
1989).  

We need
not decide which approach to follow because, under either, the October 31, 2008
contempt order violates the bankruptcy stay.  Under the first approach, the
civil contempt order is subject to the bankruptcy stay because civil contempt
is not one of the enumerated exceptions found in the bankruptcy code.  The
contempt order also violates the bankruptcy stay under the second approach
because it is designed to coerce relator=s compliance with the November 1,
2005 order awarding the temporary spousal support.  

Moreover,
we further conclude the bankruptcy court=s February 15, 2008 order for partial
relief from the bankruptcy stay does not allow the trial court to enter a civil
contempt order.  Although McMaster may have a Amonetary damages claim@ against relator with regard to her
claim for temporary support, the February 15, 2008 order only permits the trial
court to determine the amount of such claim.  The February 15, 2008 order also
only allows the trial court to determine the amount of any future support owed
by relator to McMaster so long as support is paid from relator=s future earnings and not from
property of the bankruptcy estate.  McMaster sought payment for past support.  








In her
response to relator=s motion for rehearing, McMaster argues, under the Bankruptcy
Code, relator may pay the court-ordered temporary spousal support from money in
offshore bank accounts, which a jury previously has found to be community
property.  The filing of a bankruptcy petition does not operate as stay Aof the collection of a domestic
support obligation from property that is not property of the estate.@  11 U.S.C. ' 362(b)(2)(B).  However, the February
15, 2008 order expressly provides Aall community property is property of
the bankruptcy estate,@ and further finds A[i]t is agreed that all property that
is the subject of the jury verdict and divorce proceeding is either community
property or debtor=s separate property, save and except the real property
located at 2901 Broadway.@  Therefore, all community property, including property found
by the jury to have been fraudulently transferred, is covered by the bankruptcy
stay.  

                                                                Conclusion

We
conclude the trial court=s October 31, 2008 order granting McMaster=s fifth motion to enforce, and
holding relator in civil contempt is void in violation of the bankruptcy stay. 
Accordingly, we conditionally grant relator=s petition for writ of mandamus and
direct the trial court to vacate its October 31, 2008 order.  The writ will
issue only if the trial court fails to act in accordance with this opinion.  

 

 

 

 

/s/        John S. Anderson

Justice

 

 

 

 

Panel
consists of Justices Yates, Anderson, and Boyce.  









            [1]  Relator had
previously filed pro se a bankruptcy petition on July 19, 2005, which was
dismissed on January 31, 2006.  





            [2]  In his petition,
relator claimed he was denied due process because he was not allowed to put on
his defenses to McMaster=s motion to enforce, he is not financially able to pay
the court-ordered temporary spousal support, and, alternatively, the November
1, 2005 order awarding temporary spousal support is void.  





            [3]  In re S.W.
Bell Tele. Co., 35 S.W.3d at 604.  





            [4]  See also In
re Musilli, 398 B.R. 447, 454 (E.D. Mich. 2008) (stating criminal contempt
proceedings to Auphold the dignity of the court@ and enforce court=s
orders are not subject to automatic stay provisions of section 362); In re
Allison, 182 S.W.3d 881, 884 (N.D. Ala. 1995) (ABy virtue of 11 U.S.C. ' 362(b)(1), the commencement or continuation of an action for criminal
contempt is not stayed by the filing of a petition in bankruptcy.@); In re Kearns, 168 B.R. 423, 426 (D. Kan.
1994) (ATo the extent plaintiff claims that the contempt
proceedings were intended to uphold the dignity of the court and punish him for
failure to comply with previous court orders, such actions are excepted from
the automatic stay.@).  





            [5]  This was the
approach taken by the Corpus Christi Court of Appeals in In re Wiese, 1
S.W.3d at 249.  In that case, the court of appeals held the civil contempt
portion of an order violated the bankruptcy stay and was void, but held the
criminal contempt portion of the order was not subject to the bankruptcy stay
and considered the merits of the criminal contempt.  Id.