**In re RUDAW/EMPIRICAL SOFTWARE PRODUCTS LTD., Debtor.**

**RUDAW/EMPIRICAL SOFTWARE PRODUCTS LTD., Debtor and Debtor-in-Possession/Plaintiff,**

v.

**ELGAR ELECTRONICS CORPORATION, Defendant.**

**Bankruptcy No. 87 B 20348.**

**87 Adv. 6178.**

United States Bankruptcy Court, S.D. New York.

Feb. 19, 1988.

Angel & Frankel, P.C., New York City, Brodbeck, Phleger & Harrison, San Diego, Cal., for Elgar Electronics Corp.

Eric Charles Kurtzman, Nanuet, N.Y., for debtor.

## DECISION ON DEFENDANT'S MOTION TO DISMISS THE COMPLAINT, RELIEF FROM THE AUTOMATIC STAY AND SANCTIONS

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

The defendant, Elgar Electronics Corporation ("Elgar"), has moved pursuant to Bankruptcy Rule 7012(b) to dismiss a complaint in an adversary proceeding commenced against it in this court by the debtor, Rudaw/Empirical Software Products, Ltd. ("Rudaw"), or in the alternative, for summary judgment under Bankruptcy Rule 7056 in Elgar's favor, or for abstention under 28 U.S.C. § 1334. Additionally, Elgar seeks relief from the automatic stay imposed under 11 U.S.C. § 362(a) in order to initiate contempt proceedings against the debtor in the California Superior Court in San Diego, California, for the alleged violation of that court's prepetition order preliminarily enjoining the debtor from competing with Elgar in the sale of any products which were competitive with "FailSafe", a computer software product which the debtor sold to Elgar pursuant to a written agreement dated December 4, 1986. Elgar also seeks sanctions pursuant to Bankruptcy Rule 9011 and Rule 11 of the Federal Rules of Civil Procedure.

### JUDICIALLY ADMITTED FACTS

1. On July 21, 1987, the debtor, Rudaw, filed with this court its voluntary petition for an order for relief under Chapter 11 of the Bankruptcy Code and has continued to operate and manage its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108. The debtor is a corporation, whose principal is Geoffrey Rudaw.

2. The defendant, Elgar, is a manufacturer and distributor of products used in the electronics and microcomputer industry. It is a California corporation which maintains its principal place of business in San Diego, California.

3. On December 4, 1986, the debtor and its two shareholders, Geoffrey Rudaw and Paul Marrington, entered into a written agreement with Elgar entitled "Software Purchase Agreement" pursuant to which the debtor, as a record owner of a computer program known as FailSafe Uninterrupted Power Supply Computer Back–Up and Restart Program ("FailSafe") sold and transferred to Elgar, the copyright and all associated rights in the FailSafe program. On January 27, 1987, the Software Purchase Agreement was modified by a letter agreement which required the debtor to deliver executed and notarized originals of the assignment of copyright for the FailSafe computer program. The purchase price was $160,000. Pursuant to this agreement, the debtor corporation, Geoffrey Rudaw and Paul Marrington, jointly and severally, agreed not to compete with Elgar for a period of two years after the transfer of the FailSafe source and object codes to Elgar.

4. On January 27, 1987, the debtor delivered certain versions of the FailSafe pro-

gram to Elgar which it represented and warranted to be the original and all copies of the source and object code for FailSafe. In addition to initial payments, Elgar was obligated to pay to the debtor the sum of $120,000 in 12 equal monthly installments. By the letter agreement, dated January 27, 1987, the parties agreed that Elgar was not obligated to make any purchase installment payments until after Elgar received executed and notarized originals of the assignment of copyright.

5. On March 31, 1987, Elgar filed a complaint against the debtor and Geoffrey Rudaw in the Superior Court of the State of California for the County of San Diego. The complaint was for declaratory relief, breach of contract, interference with contractual relations, slander of title and injunction. In the first cause of action, Elgar alleged that the debtor failed and refused to deliver original documents to Elgar as required under their purchase agreement, which thereby suspended Elgar's obligation to make any further monthly installment payments to the debtor. Elgar also alleged that the debtor contended that Elgar's suspension of monthly installment payments resulted in the reversion to the debtor of all rights, title and interest in the FailSafe program. Therefore, Elgar sought a declaratory judgment of its rights under the Purchase Agreement dated December 4, 1986 and the letter agreement of January 27, 1987. The complaint also sought damages for breach of contract and an injunction restraining the defendants from interfering with Elgar's contractual relations with others or competing with Elgar for the sale of FailSafe or similar products.

6. On June 23, 1987, the California Supreme Court entered a Preliminary Injunction enjoining the debtor, Geoffrey Rudaw, and all those acting in concert with them, including Paul Marrington, from competing with Elgar in developing or marketing any competitive or similar product to the FailSafe program and in developing, marketing or assisting in the development or marketing of the debtor's "ProPak with PowerWatch" or similar software programs. The California Superior Court further ordered:

1. Upon Defendants' delivery of the original, executed documents to plaintiff's counsel identified in paragraph 5 of the Letter Agreement of January 27, 1987, plaintiff's (sic) shall pay to defendants the amount of $50,000 representing installment payments due through June 4, 1987; and

2. Plaintiff's payment of all subsequent amounts as they become due upon defendants' performance of the terms of the parties' Software Purchase Agreement and Letter Agreement of January 27, 1987.

7. In response to Elgar's complaint filed in the Superior Court of the State of California, and in support of the debtor's Cross-complaint, the debtor's California attorney, Arthur F. Holz, Esq., filed a Memorandum of Points And Authorities, which states in material part on page 6, as follows:

Elgar paid the software purchase contract payments up to date on June 26, 1987 as a condition of the order it requested. As far as the Second Cause of Action is based on nonpayment, *it is moot at this time* and Cross plaintiff will dismiss it—without prejudice in view of the remaining contract payments which may or may not be made—and if not made, the Cause of Action will be amended back in.

(Emphasis added).

8. Thus, as of June 26, 1987, Elgar paid the $50,000 representing installment payments due through June 4, 1987, as directed by the California Superior Court as a condition imposed under the Preliminary Injunction obtained by Elgar on June 23, 1987, which eliminated Elgar's nonpayment of the monthly installments to the debtor as grounds for the breach of contract defense asserted by the debtor in opposition to Elgar's right to a preliminary injunction.

9. On July 24, 1987, before any further monthly installments were due from Elgar, the debtor filed its Chapter 11 petition with this court.

10. On July 29, 1987, the debtor filed with this court a motion pursuant to 11

U.S.C. § 365 to reject the FailSafe Software Purchase Agreement with Elgar as an executory contract. On September 22, 1987, this court entered an order approving the debtor's rejection of the FailSafe contract.

11. Pursuant to a summons and complaint dated October 8, 1987, the debtor commenced an adversary action against Elgar which asserted in the first count that because the debtor had rejected the FailSafe agreement with Elgar as an executory contract, the debtor was entitled to a return of the equipment and software source code that Elgar purchased from the debtor. In the second count the debtor sought to restrain Elgar from interfering with the debtor's arrangement with Paul Marrington concerning the FailSafe program. The third count sought to enjoin Elgar from using, duplicating or distributing FailSafe and interfering with contractual relations of the debtor for the sale of FailSafe or similar products.

■ 12. On October 19, 1987, this court ruled from the bench that it would not grant the debtor's application for a preliminary injunction because there was little likelihood that the debtor would succeed in its adversary action against Elgar because the rejection of an executory contract is not the equivalent of rescission. The debtor need not perform a rejected executory contract, and other party has a right to file a proof of claim for damages arising out of the debtor's rejection. However, such rejection does not give the debtor the right to recover property sold and transferred to the other party. The court noted that the debtor cannot undo an executed sale of property where title has passed. Such property does not revert to the debtor as a result of the debtor's rejection of the executory contract.

13. Pursuant to a document entitled Amendment to Complaint, dated November 23, 1987, the debtor deleted the third count in its adversary complaint dated October 6, 1987, which sought to enjoin Elgar from using, duplicating or distributing FailSafe. The Amendment repeated the first two counts in its original complaint and alleged that all rights to FailSafe which had been transferred to Elgar pursuant to the rejected FailSafe Purchase Agreement properly reverted back to the debtor. The debtor also alleged as to the first count that Elgar breached the FailSafe Agreement, with the result that the rights to FailSafe properly reverted back to the debtor. The second count, as previously stated, is for Elgar's interference with Paul Marrington's right to market or sell a competitive "PowerWatch" software computer program, which Elgar contends violates Marrington's non-competition obligations under the FailSafe Software Purchase Agreement, which the debtor previously rejected.

## DISCUSSION

### 1. *Sufficiency of The Debtor's Complaint*

■ The debtor's claim that all of the rights to the FailSafe program reverted to the debtor, is bottomed on the allegations in Count One of its adversary complaint which charges that Elgar breached the FailSafe Software Purchase Agreement dated December 4, 1986, as amended on January 27, 1987. The debtor may have waived any claim for breach of contract by having accepted from Elgar $50,000 in monthly installments due through June 4, 1987, as directed by the California Superior Court in satisfaction of the debtor's claim for breach of contract. The debtor's California attorney stated in papers filed in connection with its cross-complaint against Elgar that the debtor's cause of action for breach of contract "is moot at this time and cross plaintiff will dismiss it ...". Nonetheless, independent of the issue of waiver, it is manifest that the debtor's basis for claiming that the rights to the FailSafe program reverted to the debtor is insufficient as a matter of law.

A motion to dismiss a complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as made applicable under Bankruptcy Rule 7012, must be granted when it appears with certainty that no set of facts could be proven at trial which would entitle a plaintiff to any relief. *Conley v. Gibson,* 355

U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Dioguardi v. Durning,* 139 F.2d 774 (2d Cir.1944); *Trans World Airlines, Inc., et al. v. Texaco Inc,. (In re Texaco Inc.),* 81 B.R. 813 (Bankr.S.D.N.Y.1988).

■ The debtor elected to reject the FailSafe Purchase Agreement because the contract imposed onerous and burdensome obligations upon the debtor which the debtor decided, in the exercise of its business judgment, were not economically advantageous to assume. Although the agreement was executory in part as to both the debtor and Elgar, it also contained provisions which were non-executory; the debtor sold to Elgar the rights to the FailSafe computer program for $160,000. Pursuant to 11 U.S.C. § 365, a debtor in possession may assume or reject an executory contract or unexpired lease. Rejection denies the right of the contracting creditor to require the debtor to perform the executory portions of the contract; limits the creditor's claim to damages for breach of contract, and prohibits a rejecting debtor from compelling the contracting creditor to perform its executory obligations. *Leasing Service Corporation v. First Tennessee Bank National Association,* 826 F.2d 434, 436 (6th Cir. 1987). *In re Executive Technology Data Systems,* 79 B.R. 276, 282 (Bankr.E.D.Mich. 1987). However, the rejection of an executory contract pursuant to 11 U.S.C. § 365 is not the equivalent of rescission; the rejection does not obligate Elgar to return the FailSafe property it acquired as a result of the purchase which was not executory and therefore not subject to the debtor's rejection power. *Leasing Service Corporation v. First Tennessee Bank National Association,* 826 F.2d at 437; *Murphy v. C & W Limited Corporation (In re Murphy),* 694 F.2d 172, 174 (8th Cir.1982); *Jenson v. Continental Financial Corporation,* 591 F.2d 477, 482 (8th Cir.1979); *In re Executive Technology Data Services,* 79 B.R. at 282.

Accordingly, the debtor's allegations in Count One of its amended adversary complaint that the rights to the FailSafe program reverted to the debtor because of Elgar's alleged breach of the FailSafe Purchase Agreement, which the debtor elected to reject, are insufficient as a matter of law.

■ In the Second Count in the amended complaint which is the only remaining count, the debtor alleges that Elgar has commenced an action against Paul Marrington, one of the creators of FailSafe, and that Elgar is asserting Marrington's noncompetition obligation, which he agreed to under the FailSafe Purchase Agreement, in an attempt to enjoin Marrington from marketing a competitive product known as "PowerWatch". The debtor asserts that it owns the exclusive distribution rights to "PowerWatch". The debtor further alleges that Elgar's action against Marrington is an interference with the debtor's contractual relations with Marrington in "disregard of the rights which accrued to the debtor in FailSafe after the Bankruptcy Court authorized the rejection of the FailSafe Agreement."

This Second Count is also patently insufficient as a matter of law because, as previously stated, the debtor's rejection of the FailSafe Agreement was not a rescission and Elgar is not required to return the FailSafe rights which it purchased from the debtor. Hence, no rights "accrued to the debtor in FailSafe after the Bankruptcy Court authorized the rejection of the FailSafe Agreement." Therefore, the debtor has no standing to challenge Elgar's action against Marrington to enforce Marrington's independent noncompetition obligation which Marrington assumed when he signed the FailSafe Purchase Agreement. The fact that the debtor may have a contract with Marrington does not mean that Marrington is free to violate his contractual obligations to Elgar under the FailSafe Purchase Agreement, especially when the debtor no longer retains any title to the FailSafe rights.

A party who enters into a products distribution contract with a second party with the knowledge that the second party had previously agreed under a valid noncompetition contract with a third party not to distribute or compete with the third party in the distribution of those or similar prod-

ucts, cannot be heard to say that the previous noncompetition contract interferes with his subsequent contractual rights with the second party. Marrington was contractually precluded by Elgar from entering into a contract with the debtor for the distribution of products in competition with Fail-Safe. Therefore, the debtor is in no position to assert that Elgar's enforcement of its previous contract with Marrington interferes with the debtor's subsequent contract with Marrington, which was entered into by the debtor with knowledge of the earlier contract. If anything, the debtor has induced Marrington to violate this earlier contract with Elgar.

### 2. *Relief From Stay*

■ Elgar seeks relief from the automatic stay to join the debtor as a codefendant with Marrington for the purpose of initiating contempt proceedings against them in the California Superior Court for alleged violations of that court's preliminary injunction order dated June 23, 1987, which enjoined the debtor and Marrington from selling a competitive product called "ProPak with PowerWatch". The debtor was personally served with a copy of the Preliminary Injunction Order on June 29, 1987, before the commencement of the debtor's Chapter 11 case on July 21, 1987.

■ The power of the California Superior Court order carries with it the power to punish for disobedience of that order, including punishment for contempt. *In re Debs*, 158 U.S. 564, 594–595, 15 S.Ct. 900, 910–11, 39 L.Ed. 1092 (1895). A state court prepetition order which does not relate to the collection of prepetition claims or property of the estate may be enforced by contempt proceedings against a debtor and its officers in order to vindicate the dignity of the state court without violating the automatic stay. *In re Cohoes Industrial Terminal, Inc.*, 62 B.R. 369, 378 (Bankr.S. D.N.Y.1986) *aff'd* 70 B.R. 214 (S.D.N.Y. 1987). The automatic stay imposed under 11 U.S.C. § 362(a) may not be used as a shield to sanction contumacious conduct in violation of a prepetition order enjoining a debtor from violating a party's property rights. *In re Cinnabar 2000 Haircutters,*

*Inc.*, 20 B.R. 575 (Bankr.S.D.N.Y.1982). Thus, where the terms of the order in question are specific and unambiguous, such order may be enforced by a contempt proceeding notwithstanding the fact that the contemnor is a debtor under the Bankruptcy Code. *International Distribution Centers, Inc. v. Walsh Trucking Co., Inc.*, 62 B.R. 723 (S.D.N.Y.1986).

Therefore, Elgar is entitled to relief from the stay solely for the purpose of initiating contempt proceedings against the debtor and its officers for the alleged violation of the California Superior Court's preliminary injunction order dated June 23, 1987.

### 3. *Sanctions*

■ Elgar seeks the imposition of sanctions pursuant to Fed.R.Civ.P. 11, as made applicable by Bankruptcy Rule 9011. These provisions provide that sanctions should be imposed when it appears that after reasonable inquiry, a competent attorney could not form a reasonable belief that a pleading is factually and legally well grounded, Fed.R.Civ.P. 11 provides:

> [T]he signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

For enforcement of this requirement, the Rule provides:

> If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

248

 The signer's conduct is to be judged as of the time the pleading is signed. *Olveri v. Thompson,* 803 F.2d 1265, 1274 (2d Cir.1986). An objective standard is imposed rather than subjective good faith. *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985). The adversary complaint filed by the debtor appears to reflect an approach bottomed on the theory of a software licensing agreement, which would give rise to a debtor's right to reject executory burdens. On the other hand, a developer's sale of software usually presents no bankruptcy rejection problems.

> However, outright sales are not common in the mass market; rather licensing predominates.

*Rejection of Computer Software Licensing Agreements in Bankruptcy,* 8 Cardozo L.Rev. 361, 366 (1986).

It was only after the debtor sought to reject its software agreement with Elgar, which was after the debtor's adversary complaint was filed in this court, that the court concluded that the agreement should be interpreted as a sale of computer software, which also contained significant executory obligations applicable to both parties, rather than a licensing agreement. Thus, it cannot be said that when the debtor's adversary complaint was filed that it was clear that the debtor had absolutely no chance of succeeding to the ownership of the software or the copyright interest following a rejection of the contract. Therefore, the court will not impose sanctions for a position that might have been legally supportable when the complaint was filed.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A) and (G).

2. Elgar's motion to dismiss the debtor's adversary complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7012, is granted because the two remaining counts in the amended complaint are legally insufficient and do not state claims for which relief can be obtained.

3. Elgar's motion for relief from the automatic stay imposed under 11 U.S.C. § 362(a) is granted solely for the purpose of permitting Elgar to commence contempt proceedings against the debtor and its officers in the California Superior Court for the alleged violation of that court's preliminary injunction order dated June 23, 1987.

4. Elgar's application for the imposition of sanctions pursuant to Fed.R.Civ.P. 11, as made applicable by Bankruptcy Rule 9011, is denied because it cannot be said that a competent attorney could not form a reasonable belief that the pleading was factually and legally well grounded at the time it was filed.

SETTLE ORDER on notice.