**In re PLUMBEREX SPECIALTY PRODUCTS, INC., Debtor.**

**Truebro, Inc., Movant,**

**v.**

**Plumberex Specialty Products, Inc., Respondent.**

**No. RS 04–14498 PC.**

United States Bankruptcy Court, C.D. California, Riverside Division.

June 7, 2004.

Norman L. Hanover, Martha A. Warriner, Reid & Hellyer, LLP, Riverside, CA, Robert J. Schaap, Law Offices of Robert J. Schaap, Woodland Hills, CA, for Plumberex Specialty Products, Inc.

David M. Poitras, P.C., Jeffer, Mangels, Butler & Marmaro, LLP, Los Angeles, CA, James A.G. Hamilton, Jerry Cohen, Perkins Smith & Cohen, LLP, Boston, MA, for Truebro, Inc.

## MEMORANDUM DECISION

PETER J. CARROLL, Bankruptcy Judge.

Truebro, Inc. ("Truebro") seeks relief from the automatic stay to initiate con-

tempt proceedings against the debtor in possession, Plumberex Specialty Products, Inc. ("Plumberex"), in a non-bankruptcy forum. Plumberex opposes Truebro's motion. At the hearing, James A.G. Hamilton and David M. Poitras appeared on behalf of Truebro, and Norman L. Hanover and Robert J. Schaap appeared for Plumberex. The court, having considered the pleadings, evidentiary record, and arguments of counsel, makes the following findings of fact and conclusions of law [1] pursuant to Fed.R.Civ.P. 52, as incorporated into Fed.R.Bankr.P. 7052 which is applicable to contested matters. Fed. R.Bankr.P. 9014(c).

## I. STATEMENT OF FACTS

Plumberex is engaged in the business of designing, manufacturing, marketing and selling undersink protective products that insulate and cover exposed undersink pipes to protect individuals from physical injury due to impact or scalding. Plumberex has approximately 30 employees in its administrative, manufacturing and sales operations. Since 1989, Plumberex has sold its products nationwide through a combination of in-house sales and a network of sales representatives.

Truebro is a competitor of Plumberex. On August 11, 2000, Truebro filed a complaint in Case No. 00–11619–CBS, styled *Truebro, Inc. v. Plumberex Specialty Products, Inc., et. al.,* in the United States District Court for the District of Massachusetts, seeking damages and injunctive relief for alleged patent infringement arising from Plumberex's sale of its Pro 2000 undersink protective product and alleged false advertising in conjunction with Plumberex's sale of its "Handy–Shield" undersink product. After a trial on the merits, a Memorandum of Decision and Order for Judgment ("Memorandum of Decision") was entered in favor of Truebro on March 9, 2004. Pursuant to the Memorandum of Decision, the court entered an Amended Judgment in a Civil Case ("Judgment") on March 11, 2004, awarding Truebro damages and attorneys fees totaling $2,139,109. The Judgment further provided, in pertinent part:

> neither Plumberex Specialty Products, Inc. and Futura Sales Inc., nor any one acting in concert with either of them, shall make, use, sell[,] offer to sell, or import the Pro–2000 product *or any other product covered by the Truebro, Inc. patents in suit;* .... [2]

On April 5, 2004, Plumberex filed a notice of appeal from the Judgment. Plumberex did not seek nor obtain a stay of the Judgment pending appeal. On April 9, 2004, Plumberex filed its voluntary chapter 11 petition in this case.

On April 30, 2004, Truebro filed this motion seeking relief from the automatic stay for "cause" pursuant to 11 U.S.C. § 362(a)(1) to pursue a contempt proceeding against Plumberex for allegedly violating the injunction contained in the Judgment. Truebro alleges that Plumberex filed its bankruptcy case in bad faith to delay, hinder or interfere with Truebro's prosecution of its non-bankruptcy action, and that the claims at issue between the parties arise under non-bankruptcy law and can be most expeditiously resolved in

---

**1.** To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

**2.** *Declaration of Thomas W. Trueb in Support of Truebro's Motion for Relief From the Automatic Stay Under 11 U.S.C. § 362,* Ex. 3, p. 2 (emphasis added).

the non-bankruptcy forum. Specifically, Truebro claims that Plumberex has acted in contempt of the infringement injunction "by making, using, selling and/or offering for sale an undersink protective product it calls the 'Pro Extreme.'" [3] According to Truebro, Plumberex "intends to replace its sales of the Pro 2000, which has been enjoined as infringing, with the Pro Extreme," which Truebro believes is *"likely to be infringing."* [4] Truebro asserts that the Pro Extreme is an undersink product "highly similar to the Pro–2000 that the court specifically found to be infringing," and reasons that the Pro Extreme is "likely to be found by the Massachusetts District Court to infringe one or more claims" of Truebro's existing patents if it is permitted to pursue a contempt action.[5]

In its response, Plumberex argues that Truebro seeks to " 'enforce' the District Court Order in a way that was never intended." [6] Plumberex points out that neither the Memorandum of Decision nor the Judgment either refer to the Pro Extreme nor contain any findings that the Pro Extreme infringes one or more of Truebro's patents. According to Plumberex, Truebro knew prior to trial that Plumberex was marketing the Pro Extreme, but that Truebro elected not to include the Pro Extreme in the issues that were tried before the federal district court in Massachusetts. Having decided to proceed to trial

without asserting any claim regarding the Pro Extreme, Plumberex asserts that Truebro is precluded by the doctrine of judicial estoppel from now maintaining an inconsistent position and claiming that Plumberex has violated the injunctive provisions of the Judgment by selling the Pro Extreme. Finally, Plumberex argues that granting Truebro's request for stay relief would be prejudicial to creditors as well as its efforts to reorganize. Plumberex estimates that it will incur attorneys fees and costs in excess of $100,000 defending Truebro's contempt proceeding before the federal district court in Massachusetts if relief from the stay is granted.

## II. DISCUSSION

The court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b). Truebro's motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G) and (O). Venue is appropriate in this court. 28 U.S.C. § 1409(a).

### A. *Automatic Stay*

Pursuant to § 362 of the Bankruptcy Code,[7] the filing of a bankruptcy petition stays the enforcement of a judgment obtained before the commencement of the case against the debtor and property of the estate.[8] By means of the auto-

---

**3.** *Truebro's Motion for Relief From the Automatic Stay Under 11 U.S.C. § 362*, p. 6, l.14–15 (emphasis added).

**4.** *Truebro's Motion for Relief From the Automatic Stay Under 11 U.S.C. § 362*, p. 7, l.11–13 (emphasis added).

**5.** *Truebro's Motion for Relief From the Automatic Stay 11 U.S.C. § 362*, p. 6, l.19–22 and footnote 2.

**6.** *Debtor's Opposition to Truebro, Inc.'s Motion for Relief From the Automatic Stay Under 11 U.S.C. § 362*, p. 7, l.2–3.

**7.** Unless otherwise indicated, chapter, section and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

**8.** 11 U.S.C. § 362(a)(2). Congress intended the scope of § 362(a) to be broad, staying nearly every type of formal or informal action against the debtor or property of the estate. *See Delpit. v. Comm'r Int'l Revenue Serv.*, 18 F.3d 768, 771 (9th Cir.1994); *Computer Communications, Inc. v. Codex Corp. (In re Computer Communications, Inc.)*, 824 F.2d 725, 729 (9th Cir.1987). Section 362(a) states:

matic stay, "Congress intended to give debtors a 'breathing spell' from their creditors and to stop 'all collection efforts, all harassment, and all foreclosure actions.'" *Delpit,* 18 F.3d at 771, *quoting* H.R.Rep. No. 95–595, at 340 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, at 6296–97. *See Santa Clara County Fair Ass'n v. Sanders (In re Santa Clara County Fair Ass'n),* 180 B.R. 564, 566 (9th Cir.BAP1995) (stating that the automatic stay serves the two-fold purpose of "prevent[ing] the diminution or dissipation of the bankruptcy estate and enabl[ing] the debtor to avoid the multiplicity of claims arising against the estate in different forums"). This "breathing spell" afforded by the automatic stay permits a chapter 11 debtor in possession to focus its efforts on reorganization. Conversely, the automatic stay promotes the goal of equality of distribution by preventing a piecemeal dismemberment of the bankruptcy estate, while assuring that a debtor in possession has an opportunity to use property necessary for an effective reorganization. *See generally* 3 *Collier on Bankruptcy* ¶ 362.03, at 362–13 (Alan N. Resnick & Henry J. Sommers eds., 15th ed. rev.2003).

 Section 362(d)(1) directs the court to grant relief from the automatic stay upon a showing of "cause." [9] Although the term "cause" is not defined in the Code, courts in the Ninth Circuit have granted relief from the stay under § 362(d)(1) when necessary to permit pending litigation to be concluded in another forum if the non-bankruptcy suit involves multiple parties or is ready for trial. *See, e.g., Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.),* 912 F.2d 1162, 1166 (9th Cir.1990) (stating that "[w]here a bankruptcy court may abstain from deciding issues in favor of an imminent state court trial involving the same issues, cause may exist for lifting the stay

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
(4) any act to create, perfect, or enforce any lien against property of the estate;
(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and
(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

11 U.S.C. § 362(a).

9. Section 362(d) provides, in pertinent part:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
(1) *for cause,* including the lack of adequate protection of an interest in property of such party in interest, . . .

11 U.S.C. § 362(d)(1) (emphasis added).

as to the state court trial"); *Packerland Packing Co. v. Griffith Brokerage Co. (In re Kemble)*, 776 F.2d 802, 807 (9th Cir. 1985) (affirming an order lifting the stay to permit a creditor to pursue a conversion and fraudulent conveyance action pending in the federal district court following a remand of the case by the appellate court for a retrial on the damages issue); *Santa Clara*, 180 B.R. at 567 (affirming an order lifting the stay to allow prosecution of a pending Title VII claim against the debtor in the federal district court). Section 362(a)'s legislative history supports this conclusion:

> [I]t will often be more appropriate to permit proceedings to continue in their place of origin, *when no great prejudice to the bankruptcy estate would result,* in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

H.R.Rep. No. 95–595, at 341 (1977); S.Rep. No. 95–989, at 50 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836 (emphasis added). Judicial economy is a factor to be considered by bankruptcy courts when deciding lift stay issues. *See Piombo Corp. v. Castlerock Prop. (In re Castlerock Prop.)*, 781 F.2d 159, 163 (9th Cir.1986); *Kemble*, 776 F.2d at 807; *Santa Clara*, 180 B.R. at 566. However, a bankruptcy court must be cognizant "of the entire bankruptcy case and its progress," and adjudicate "stay relief issues from this perspective." *Santa Clara*, 180 B.R. at 567.

The burden of proof on a motion to modify the automatic stay is a shifting one.[10] *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2nd Cir.1990). To obtain relief from the automatic stay, the party seeking relief must first establish a *prima facie* case[11] that "cause" exists for relief under § 362(d)(1). *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 142 (2nd Cir.1999); *Duvar Apt., Inc. v. Fed. Deposit Ins. Corp. (In re Duvar Apt., Inc.)*, 205 B.R. 196, 200 (9th Cir. BAP 1996); *FSFG Serv. Corp. v. Kim (In re Kim)*, 71 B.R. 1011, 1015 (Bankr.C.D.Cal. 1987). Once a *prima facie* case has been established, the burden shifts to the debtor to show that relief from the stay is unwarranted. *Sonnax*, 907 F.2d at 1285; *Duvar Apt.*, 205 B.R. at 200. If the movant fails to meet its initial burden to demonstrate cause, relief from the automatic stay should be denied. *Spencer v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2nd Cir.2002); *Mazzeo*, 167 F.3d at 142; *Kim*, 71 B.R. at 1015.

Motions for stay relief are summary proceedings. *Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 740 (9th Cir.1985), *cert. denied*, 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985); *Santa Clara*, 180 B.R. at 566. Stay litigation is confined to the issues of " 'lack of adequate protection, the debtor's equity in the property, and the necessity of the property to an effective reorganization of the debtor,

---

10. Section 362(g) states:

> In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—
> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
> (2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g).

11. A *prima facie* case requires the movant to establish "a factual and legal right to the relief that it seeks." *In re Elmira Litho, Inc.*, 174 B.R. 892, 902 (Bankr.S.D.N.Y.1994); *see In re Planned Systems, Inc.*, 78 B.R. 852, 859–60 (Bankr.S.D.Ohio 1987). *See generally,* 3 *Collier on Bankruptcy* ¶ 362.10, at 362–117 (Alan N. Resnick & Henry J. Sommers eds., 15th ed. rev.2003).

or the existence of other cause for relief from the stay.'" *Computer Communications,* 824 F.2d at 729, *quoting* S.Rep. No. 95–989, at 55 (1978), *reprinted in* 1978 U.S.C.C.A.N. at 5841; *see Johnson,* 756 F.2d at 740 (stating that the "validity of the claim or contract underlying the claim is not litigated during the hearing"); *Wade v. State Bar of Arizona (In re Wade),* 115 B.R. 222, 230 (9th Cir. BAP 1990), *aff'd,* 948 F.2d 1122 (9th Cir.1991) (stating that "the assertion of counterclaims in relief from stay litigation is improper"). The decision whether to grant or deny stay relief is within the broad discretion of the bankruptcy court. *Santa Clara,* 180 B.R. at 566.

## B. *The Curtis Factors*

Courts have identified various factors relevant to determining whether the stay should be lifted to allow a creditor to continue pending litigation in a non-bankruptcy forum.[12] These factors are closely related to those that a bankruptcy court must consider in deciding whether to exercise permissive abstention under 28 U.S.C. § 1334(c)(1).[13]

---

**12.** *See In re Johnson,* 115 B.R. 634, 636 (Bankr.D.Minn.1989) (articulating a seven-part test); *In re Curtis,* 40 B.R. 795, 799–800 (Bankr.D.Utah 1984) (discussing the elements of a twelve-part test). For example, in *In re Johnson,* 115 B.R. 634 (Bankr.D.Minn.1989), the bankruptcy court considered the following seven factors relevant in deciding whether a pending suit for breach of contract should proceed in state court: (1) whether insurance coverage with a duty of defense is available to the debtor or the estate, or conversely, whether the conduct of the defense will impose a financial burden on the debtor or the estate; (2) whether judicial economy favors the continuation of the action in the tribunal in which it was commenced, to fix and liquidate the claim which then may be made against the debtor's estate, and to avoid a multiplicity of suits and proceedings involving the same subject matter; (3) whether the state-court litigation has progressed to trial-readiness, with the likelihood that investment of resources in trial preparation would be wasted if trial were deferred; (4) whether the issues presented are governed solely by state law, or should be adjudicated by a specialized tribunal with expertise in their subject matter; (5) whether the litigation involves other parties over whom the Bankruptcy Court lacks jurisdiction, and whether full relief may be accorded to all such nondebtor parties without the debtor's presence in the lawsuit; (6) whether the creditor has a probability of success on the merits; and (7) whether the interests of the debtor and the estate would be better served by the resolution of threshold bankruptcy-law issues in the Bankruptcy Court before the court and the parties address the issue of the forum where the claim against the debtor is to be fixed and liquidated. *Id.* at 636 (citations omitted). Later, the *Johnson* factors were applied by the court in *Edmondson v. Am. W. Airlines, Inc. (In re Am. W. Airlines, Inc.),* 148 B.R. 920, 923–24 (Bankr.D.Ariz.1993), in reaching its decision to modify the stay to permit the adjudication of claims alleged in a sexual harassment complaint pending against the debtor in the United States District Court for the District of Nevada at the time of bankruptcy.

**13.** *In re Hakim,* 212 B.R. 632, 639 (Bankr. N.D.Cal.1997). Section 1334(c)(1) of Title 28 states:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). In *Tucson Estates,* the Ninth Circuit adopted the following factors summarized in *In re Republic Reader's Serv., Inc.,* 81 B.R. 422, 429 (Bankr.S.D.Tex. 1987) as the test for determining whether permissive abstention is appropriate: (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the

■ Twelve nonexclusive factors were discussed in *In re Curtis*, 40 B.R. 795 (Bankr.D.Utah 1984), as issues a bankruptcy court might weigh in determining whether to lift the stay to permit pending litigation to continue in another forum:

1. Whether the relief will result in a partial or complete resolution of the issues;

2. The lack of any connection with or interference with the bankruptcy case;

3. Whether the foreign proceeding involves the debtor as a fiduciary;

4. Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;

5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

7. Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;

8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);

9. Whether movant's success in the foreign proceeding would result in a

10. The interests of judicial economy and the expeditious and economical determination of litigation for the parties;

11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial, and

12. The impact of the stay on the parties and the "balance of hurt,"

*Id.* at 799–800 (citations omitted). These twelve factors, commonly known as the "*Curtis* factors," have been adopted by the Second Circuit and courts in other circuits. *See, e.g., Bogdanovich*, 292 F.3d at 110 n. 1; *Mazzeo*, 167 F.3d at 142–43; *Goya Foods, Inc. v. Unanue–Casal (In re Unanue–Casal)*, 159 B.R. 90, 96 (D.P.R.1993), *aff'd*, 23 F.3d 395 (1st Cir.1994); *Walker v. Wilde (In re Walker)*, 103 B.R. 281, 284–85 (D.Utah 1989); *Busch v. Busch (In re Busch)*, 294 B.R. 137, 141 n. 4 (10th Cir. BAP 2003); *In re Fowler*, 259 B.R. 856, 859 n. 1 (Bankr.E.D.Tex.2001); *In re CLC of Am., Inc.*, 68 B.R. 512, 513–14 (Bankr. E.D.Mo.1986); *Wilson v. Unioil (In re Unioil)*, 54 B.R. 192, 194 (Bankr.D.Colo. 1985).

The Second Circuit first applied the *Curtis* factors in *Sonnax Industries.* In that case, Sonnax Industries, Inc. ("Sonnax") filed a chapter 11 bankruptcy petition after failing to obtain relief in the New York state courts from an injunction which prohibited it from conducting business with, or soliciting business from, customers of Tri Component Products Corporation ("Tri Component"). Following

judicial lien avoidable by the debtor under Section 522(f);

proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of [the bankrupt-

cy court's] docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties. *Tucson Estates*, 912 F.2d at 1167.

bankruptcy, Tri Component sought relief from the stay to continue prosecution of its state court claim against Sonnax and other defendants and to file motions for contempt for alleged violations of the state court injunction. In affirming the district court's order denying relief from the stay, the Second Circuit applied four of the twelve *Curtis* factors finding that (1) the New York state court proceeding was connected to, and would interfere with, the bankruptcy proceeding; (2) Tri Component had failed to carry its burden to show bad faith as cause for lifting the stay; (3) the balance of harms tipped in Sonnax's favor because, while lifting the stay would doom Sonnax's attempts to reorganize, Tri Component would not suffer significant hardship if the stay remained, and (4) the interests of judicial economy and the speedy and economical determination of litigation supported a denial of relief from the stay. *Sonnax,* 907 F.2d at 1286–87.

As the court noted in *Sonnax,* not all of the twelve *Curtis* factors are relevant in every case. *Id.* at 1286; *see Mazzeo,* 167 F.3d at 143; *Busch,* 294 B.R. at 141. Nor is a court required to give each of the *Curtis* factors equal weight in making its determination. *Burger Boys, Inc. v. S. St. Seaport Ltd. Pa. (In re Burger Boys, Inc.),* 183 B.R. 682, 688 (S.D.N.Y.1994); *In re N.Y. Med. Group, P.C.,* 265 B.R. 408, 413 (Bankr.S.D.N.Y.2001).

## C. Truebro Is Not Entitled To Relief From the Automatic Stay

Having considered the evidence presented, the court concludes that Truebro has not met its burden to demonstrate cause for relief from the stay. Not only has Truebro failed to establish by competent evidence that Plumberex filed its bankruptcy petition in bad faith, but the court's consideration of *Curtis* factors 1, 2, 7, 10, 11 and 12 support a denial of Truebro's motion.[14]

### 1. Bad Faith

" 'The existence of good faith depends on an amalgam of factors and not upon a specific fact.' " *Marsch v. Marsch (In re Marsch),* 36 F.3d 825, 828 (9th Cir.1994), *quoting State of Idaho v. Arnold (In re Arnold),* 806 F.2d 937, 939 (9th Cir.1986). The test is whether the debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis. *Marsch,* 36 F.3d at 828. Good faith is lacking only when the debtor's actions constitute a clear abuse of the bankruptcy process. *Arnold,* 806 F.2d at 939.

Truebro points to the timing of Plumberex's bankruptcy as evidence that Plumberex filed its voluntary chapter 11 petition in bad faith.[15] While the timing of the filing is a factor to be considered in determining bad faith, the evidence supports a finding that Plumberex, faced with a $2,139,109 judgment and the real threat of being driven out of business, filed bankruptcy as a last resort. It is undisputed that Plumberex sought chapter 11 protection because it was unable to either pay Truebro's judgment or obtain a *supersedeas* bond. However, Plumberex was an operating business with approximately 30 employees and the means to reorganize when it filed its bankruptcy petition.[16] There is no evidence that Plumberex had

---

**14.** The court has considered and given due regard to all the relevant *Curtis* factors, but confines its discussion to only those factors the court considers dispositive in this case.

**15.** *Declaration of Thomas W. Trueb in Support of Truebro, Inc.'s Motion for Relief From the*

*Automatic Stay Under 11 U.S.C. § 362,* p. 12, l.5–7.

**16.** The court takes judicial notice of the *Debtor's Chapter 11 Preliminary Status Report* filed on May 11, 2004, in which Plumberex states:

the financial ability on the petition date to satisfy Truebro's judgment or to obtain a bond to stay enforcement of the Judgment pending appeal.[17] Nor is there _any evidence that Plumberex has failed to perform its duties as debtor in possession since the commencement of the case or failed to move expeditiously toward an effective reorganization. Because Plumberex's actions fall short of a clear abuse of the bankruptcy process, Truebro has not established bad faith as cause for lifting the stay.

> Although the Debtor's business is sound and profitable, it was unable to pay the Truebro judgment or to obtain a bond to stay enforcement of the judgment pending the appeal. If Truebro were able to proceed with enforcement against the Debtor, the Debtor would have no choice but to liquidate its assets, putting approximately thirty people out of work and jeopardizing the business operations of numerous suppliers. In addition to preventing the immediate liquidation of the business, the Debtor intends to use the chapter 11 process to propose a plan to pay the judgment—if the appeal is unsuccessful—over time.
> Pursuant to the Truebro judgment, the Debtor was also required to withdraw one of its products from the market and make modifications to two others. The Pro–2000, which accounted for about 10% of the Debtor's sales, has been taken off the market and its sales representative[s] have been told to immediately return all product in the distribution stream to the Debtor. The withdrawal of the Pro–2000 from the market has caused the Debtor to write down the value of its inventory by approximately $100,000. The Debtor estimates that it will also add about $10,000 to $12,000 in expenses—primarily shipping costs—over the second quarter of the year. Certain adjustments have been made to the Debtor's financial projections to cover these changes, including a substantial increase in "returns and allowances," but the full impact is presently unknown. It has also incurred additional costs as a result of the modifications that it has made to the fasteners on certain products in order to bring them in compliance with the Truebro judgment's findings regarding compliance with the

### 2. Curtis Factor 2

■ It is undeniable that the federal district court action is connected to, and would interfere with, the bankruptcy case. The Judgment entered by the district court assessed damages and attorneys fees of $2,139,109, and barred Plumberex from making, using or selling its Pro 2000 product. Plumberex is appealing the Judgment while reorganizing its business operations to facilitate the marketing of its other products, including the Pro Extreme, to be in a position to compete successfully

> ADA. The automatic stay resulting from the chapter 11 filing has provided the Debtor with an opportunity to make these adjustments, including packaging and insert changes.
> Plumberex anticipates that it will be able to operate profitably in a chapter 11, paying all administrative expenses as they become due, while it prosecutes the appeal of the Truebro judgment.
> Id., p. 3, l.3–25.

17. In *In re Holm,* 75 B.R. 86 (Bankr.N.D.Cal. 1987), the court considered the issue of whether a chapter 11 petition filed by a debtor to avoid posting an appeal bond was in bad faith, stating:

> [A] chapter 11 filing is in good faith and may be used to replace an appeal bond if the judgment against the debtor is so large that the debtor faces severe disruption of his business if enforcement of the judgment is not stayed. However, if the debtor has the ability to satisfy the judgment from non-business assets, then it is bad faith to attempt to use the bankruptcy laws to appeal without posting a bond. Stated another way, a Chapter 11 proceeding should be dismissed only if the debtor has the clear ability to survive without bankruptcy court protection.
> Id. at 87. *See also In re Alton Telegraph Printing Co.,* 14 B.R. 238, 241 (Bankr.S.D.Ill. 1981) (holding that where a debtor is forced to file a bankruptcy petition to preserve its status as an ongoing concern and to protect its employees and its creditors while claims against it were litigated on appeal, and the bankruptcy is proceeding in an orderly manner, such filing is not in bad faith).

with Truebro and to pay the Judgment in the event its appeal is unsuccessful.

### 3. *Curtis Factor 1*

The court cannot find that relief from the stay to allow Truebro to commence a contempt action against Plumberex in the federal district court in Massachusetts would result in a complete resolution of the issues between the parties. Not only has the injunction sought to be enforced by Truebro been appealed by Plumberex, but the product alleged to be marketed by Plumberex in violation of the injunction was never the subject of Truebro's lawsuit.

In the complaint filed on August 11, 2000, Truebro accused Plumberex of patent infringement in conjunction with the manufacture and sale of its Pro 2000 product. While the litigation was pending, Plumberex began marketing the Pro Extreme.[18] Truebro, which alleged prior to trial that the Pro Extreme was simply a "variation" of the Pro 2000, did not seek to amend its complaint to allege that the Pro Extreme infringed its patents.[19] At the pretrial conference on February 21, 2003, Truebro was given the choice to either proceed to trial on March 12, 2003, solely on its claims concerning the Pro 2000 or to delay trial pending amendment of its complaint and further discovery with respect to any alleged claims concerning the Pro Extreme.[20] Truebro ultimately elected at the pre-trial conference to proceed to trial only on its claims concerning the Pro 2000 and to "use [its] other options of bringing a *separate case,* if necessary," with respect to the Pro Extreme.[21]

On March 11, 2004, the Judgment was entered against Plumberex finding the Pro 2000 product to be infringing, awarding $2,139,109 in damages and attorneys fees to Truebro, and enjoining Plumberex from manufacturing and selling the Pro 2000 product. Truebro has not alleged, nor is there any evidence to support a finding, that Plumberex is continuing to "make, use, sell, offer to sell, or import the Pro 2000 product" in violation of Truebro's injunction.

Now Truebro claims that Plumberex's continued manufacture and sale of the Pro Extreme violates that portion of the Judgment prohibiting Plumberex from marketing "any other product covered by the Truebro, Inc. patents in suit." However, the injunction contained in the Judgment is devoid of language specifically prohibiting Plumberex from

---

18. Truebro and Plumberex disagree on the date that the Pro Extreme first appeared on the market. Plumberex states that it began manufacturing and selling the Pro 3000, now known as the Pro–Extreme, in 2001. *Debtor's Opposition to Truebro, Inc.'s Motion for Relief From the Automatic Stay Under 11 U.S.C. § 362*, p. 2, l.23 to p. 3, l.1. Truebro points out that Plumberex represented through counsel at the February 21, 2003 pre-trial conference that the Pro Extreme was a product developed and offered within four months prior to the pre-trial conference. *Truebro, Inc.'s Reply Memorandum of Points and Authorities in Support of Motion For Relief From the Automatic Stay*, p. 9, l.8–16.

19. *Declaration of Robert J. Schaap in Support of Debtor's Opposition to Truebro, Inc.'s Mo-tion for Relief from the Automatic Stay Under 11 U.S.C. § 362*, Ex. A, p. 30, l.24–25.

20. Interestingly, the court observed at the pretrial conference that Truebro's use of "the word 'variation' means that [Truebro is] conceding that there's some difference" between the Pro 2000 and the Pro Extreme. *Declaration of Robert J. Schaap in Support of Debtor's Opposition to Truebro, Inc.'s Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362*, Ex. A, p. 31, l.14–16.

21. *Declaration of Robert J. Schaap in Support of Debtor's Opposition to Truebro, Inc.'s Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362*, Ex. A, p. 36, l.1–4 (emphasis added).

manufacturing and selling the Pro Extreme.[22] Indeed, Truebro grudgingly concedes that neither the Memorandum of Decision nor the Judgment either refer to the Pro Extreme nor contain any findings that the Pro Extreme infringes one or more of Truebro's existing patents. Truebro admits that any "contempt" proceeding would, in fact, constitute a *new and separate action*[23] against Plumberex to determine (1) whether the Pro Extreme infringes any of Truebro's existing patents; (2) whether Plumberex's continued manufacture and sale of the Pro Extreme fell within the scope of the injunction contained in the Judgment; (3) whether Plumberex can be held in contempt for actions taken allegedly in violation of the Judgment, or whether factors exist that would excuse such alleged violations; and (4) whether Plumberex is liable for further damages, costs and attorneys fees.

### 4. *Curtis Factors 7, 10, 11 & 12*

Not only do the interests of judicial economy support a denial of relief from the stay, but the cost of protracted litigation of a separate proceeding in a nonbankruptcy forum would prejudice the interests of other creditors of the estate.

---

**22.** Injunctive relief must be narrowly drawn, precise, and tailored to remedy the specific harm alleged. *See Brown v. Petrolite Corp.*, 965 F.2d 38, 51 (5th Cir.1992); *Lamb–Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir.1991). "Injunctive relief should be no more burdensome to the defendants than necessary to provide complete relief to the plaintiffs." *Lamb–Weston*, 941 F.2d at 974, *quoting Califano v. Yamasaki*, 442 U.S. 682, 702, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). "A court must limit the conduct it enjoins to that which is found to have been 'pursued [or] persuasively to be related to the proven unlawful conduct.'" *Nelson v. Int'l Bhd. of Elec. Workers, Local Union No. 46*, 899 F.2d 1557, 1564 (9th Cir.1990), *quoting NLRB v. Express Pub. Co.*, 312 U.S. 426, 433, 61 S.Ct. 693, 85 L.Ed. 930 (1941). *See Communications Workers v. NLRB*, 362 U.S. 479, 480–81, 80 S.Ct. 838, 4 L.Ed.2d 896 (1960) (striking part of an NLRB order requiring a union to refrain from coercing employees of "any other employer" where the NLRB had found that the union had coerced only the employees of the named employer). In *Calvin Klein Cosmetics v. Parfums de Coeur, Ltd.*, 824 F.2d 665 (8th Cir.1987), the court discussed the specificity requirement for injunctive relief under Rule 65(d) of the Federal Rules of Civil Procedure, stating:

Broad language in an injunction that essentially requires a party to obey the law in the future is not encouraged and may be struck from an order for injunctive relief, for it is basic to the intent of Rule 65(d) that those against whom an injunction is issued should receive fair and precisely drawn no-

tice of what the injunction actually prohibits. Rule 65(d)'s specificity requirement is designed to prevent uncertainty and confusion on the part of those to whom the injunction is directed, to avoid the possible founding of contempt citations on an order that is too vague to be understood, and to ascertain that the appellate court knows precisely what it is reviewing.

*Id.* at 669 (citations omitted). Language that is unspecific cannot support a finding of contempt for noncompliance with it. *Dollar Rent A Car of Washington, Inc. v. Travelers Indemnity Co.*, 774 F.2d 1371, 1376 (9th Cir.1985).

**23.** In its reply, Truebro admits:

Truebro's option ... to bring a "separate action," is *precisely* the option it is seeking this Court's leave to pursue now, i.e., seeking to bring before the court which validated the patents, interpreted the claims, and issued an injunction against infringement by "any other product," an accusation that the Pro Extreme violates the injunction.

*Truebro, Inc.'s Reply Memorandum of Points and Authorities in Support of Motion for Relief From the Automatic Stay*, p. 6, 1.7–12. Contempt proceedings for alleged violation of an injunction restraining patent infringement is a "'new and distinct proceeding'," that is "'independent of the equities of the case on which the decree is founded.'" *Wadsworth Elec. & Mfg. Co. v. Westinghouse Elec. & Mfg. Co.*, 71 F.2d 850, 852 (6th Cir.), cert. denied, 293 U.S. 604, 55 S.Ct. 122, 79 L.Ed. 696 (1934), *quoting Bullock Elec. & Mfg. Co. v. Westinghouse Elec. & Mfg. Co.*, 129 F. 105, 106 (6th Cir.1904).

Truebro has yet to commence this new action against Plumberex. There was no contempt proceeding or other litigation pending between Truebro and Plumberex in the federal district court in Massachusetts on the date of bankruptcy. Plumberex's principal offices and place of business is in California, and its witnesses more than likely reside in California. If the stay was lifted to allow Truebro to commence a further action with respect to the Pro Extreme in the federal district court in Massachusetts, Plumberex estimates that the litigation would take not less than two years to complete, and that the estate would incur attorneys fees and costs of between $100,000 and $500,000 defending the action through discovery and a trial on the merits. Litigation costs to defend such an action would be in addition to, not in lieu of, the cost of the appeal already faced by the estate which Plumberex estimates at between $100,000 and $150,000. Truebro and Plumberex agree that the appeal of the Judgment may not be concluded for another year.

Plumberex has an obligation as debtor in possession to formulate a plan of reorganization. Protracted litigation with Truebro in the federal district court in Massachusetts, coupled with the pending appeal between the parties, would interfere with Plumberex's efforts to reorganize and necessarily harm Plumberex's chances to confirm a plan in this case.

Finally, the balancing of hardships favor Plumberex. The Judgment which Truebro seeks to enforce is on appeal. There is no evidence that Plumberex is manufacturing and selling the Pro 2000 in violation of the specific terms of the injunction contained in the Judgment. While Truebro may suffer some hardship if the stay remains in effect, the lifting of the stay will likely doom Plumberex's reorganization effort.

### 5. Curtis Factor 4

Truebro's justification for the relief sought centers largely upon *Curtis* factor four, *i.e.*, whether a specialized tribunal with the necessary expertise has been established to hear the cause of action. Truebro argues that "Bankruptcy Courts consistently grant relief from stay for the pursuit of contempt proceedings before the court which issued the injunction," [24] citing *In re Hohol*, 141 B.R. 293, 296 (M.D.Pa. 1992) and *In re Rudaw/Empirical Software Prods., Ltd.*, 83 B.R. 241, 247 (Bankr. S.D.N.Y.1988).

Various courts have held that bankruptcy does not protect a debtor from liability for ongoing violations of a pre-petition injunction. *See, e.g., Hohol*, 141 B.R. at 296 (lifting the stay to permit a state court action in which a preliminary injunction had been entered to proceed to final judgment); *Rudaw*, 83 B.R. at 247 (holding that where the terms of the order are specific and unambiguous, such order may be enforced by a contempt proceeding notwithstanding the fact that the contemnor is a debtor in bankruptcy); *In re Cohoes Indus. Terminal, Inc.*, 62 B.R. 369, 378 (Bankr.S.D.N.Y.), *aff'd*, 70 B.R. 214 (S.D.N.Y.1986), *aff'd*, 831 F.2d 283 (2d Cir. 1987) (stating that "a state court pre-petition order which does not relate to the collection of pre-petition claims or property of the estate may be enforced by contempt proceedings against the debtor and its officers in order to vindicate the dignity of the state court without violating the automatic stay"); *In re Cinnabar 2000 Haircutters, Inc.*, 20 B.R. 575, 577 (Bankr.

---

24. *Truebro, Inc.'s Reply Memorandum of Points and Authorities in Support of Motion for Relief From the Automatic Stay*, p. 2, 1.14–16; *Truebro's Motion for Relief From the Automatic Stay Under 11 U.S.C. § 362*, p. 8, 1.1–2.

S.D.N.Y.1982) (stating that "the bankruptcy laws should not be a haven for contumacious conduct in violation of a party's judicially-determined trade name rights which will be diluted by a continuation of such conduct behind the shield of the automatic stay"). However, *Hohol* and *Rudaw* cited by Truebro are distinguishable on their facts.

In *Hohol*, Penox Technologies, Inc. ("Penox") obtained a preliminary injunction against its former employee, Hohol, after 17 days of hearings conducted over a period of eight months. The injunction enjoined Hohol from further acts in violation of certain Employment and Non-competition Agreements. Hohol appealed the order granting the preliminary injunction, but was denied a stay pending appeal. Hohol then filed a voluntary petition under chapter 11, and then while the appeal was still pending, sought to reject the agreements under § 365. The bankruptcy court denied Hohol's motion to reject the agreements and granted Penox's motion for relief from the stay to continue the state court action, finding that "cause exists to grant [Penox'] Motion for relief from the automatic stay in order to permit [Penox] to seek enforcement of a final resolution of the Preliminary Injunction granted to [Penox]." *Id.* at 296. The district court affirmed. *Id.* at 299.

Unlike the instant case, *Hohol* involved the debtor's alleged violation of a preliminary injunction in a state court action that was pending on the date of bankruptcy. Discovery had not been completed nor had a judgment been entered in the case. The stay was lifted to allow the state court action to conclude in the interest of judicial economy.

 *Rudaw* permitted contempt proceedings to proceed where the pre-petition order was not related to property of the estate and the terms of the order were specific, unambiguous, and narrowly tailored to protect carefully defined property rights. *See Rudaw*, 83 B.R. at 247. Here, the subject of Truebros' litigation in the federal district court was the Plumberex Pro 2000, not the Pro Extreme. The injunctive provisions of the Judgment were specifically tailored to protect Truebro's patents vis-a-vis the Pro 2000, not Plumberex's marketing of the Pro Extreme. With respect to the Pro Extreme, Truebro's injunction is neither specific nor unambiguous. The issue of whether the court's injunction encompassed the Pro Extreme must necessarily be resolved in a separate proceeding. As the Second Circuit observed in *Sonnax*, "[a]t best, *Rudaw* demonstrates that the inquiry called for by motions to lift the automatic stay are very fact-specific and involve the weighing of numerous factors peculiar to the particular case." *Sonnax*, 907 F.2d at 1288.

### III. CONCLUSION

For the foregoing reasons, the court concludes that Truebro has failed to sustain its burden to establish "cause" for relief from the stay under § 362(d)(1). Accordingly, Truebro's motion is denied without prejudice.[25] The court will enter a separate order consistent with this opinion.

---

**25.** Having denied Truebro's motion, it is unnecessary for the court to consider Plumberex's further contention that Truebro is prevented by the doctrine of judicial estoppel from ever asserting its claims regarding the Pro Extreme. *Debtor's Opposition to Truebro, Inc.'s Motion for Relief From the Automatic Stay Under 11 U.S.C. § 362*, p. 5, l.10 to p. 6, l.9.